ORIGINAL

✓M

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY 28 2009

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| NETSPHERE, INC., | § | |
| MANILA INDUSTRIES, INC.; and | § | |
| MUNISH KRISHAN | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. _____ |
| | § | |
| vs. | § | **3-09CV0988-M** |
| | § | #31483 |
| JEFFREY BARON and | § | |
| ONDOVA LIMITED COMPANY, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Plaintiffs Netsphere, Inc., Manila Industries Inc. and Munish Krishan (collectively "Plaintiffs" or "Netsphere Parties"), by and through their undersigned attorneys, hereby file this Original Complaint against Defendants Jeffrey Baron and Ondova Limited Company (collectively "Defendants"), and allege as follows:

## PARTIES

1.    Plaintiff Netsphere, Inc. ("Netsphere") is a Michigan Corporation, having its principal place of business at 1300 Bristol Street North, Suite 200, Newport Beach, California 92660.

2.    Plaintiff Manila Industries, Inc. ("Manila") is a California corporation, having its principal place of business at 23312 Eagle Ridge, Mission Viejo, California 92692.

3.     Plaintiff Munish Krishan ("Krishan") is an individual residing in Mission Viejo, California, and is the sole officer, director and shareholder of Manila and president and majority shareholder of Netsphere.  Manila, Netsphere, and Krishan shall be referred to collectively as the "Netsphere Parties."

4.     Defendant Jeffrey Baron ("Baron") is an individual residing in Texas and may be served personally at his place of residence at 2200 E. Trinity Mills Rd Carrollton, Texas 75006.

5.     Defendant Ondova Limited Company ("Ondova") is a Texas limited liability company with a principal place of business at P.O. Box 111501, 2030 Jackson Street, Carrollton, Texas 75011.   Plaintiffs are informed and believe and based thereon allege that Baron is the president and sole owner, employee, officer and/or director of Ondova and its alter ego.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as complete diversity exists between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00 (US).

7.     This Court has personal jurisdiction over Defendants due to the fact that they are citizens of Texas and continuously do business in this judicial district. Further, the contract at issue was entered into in this judicial district and a substantial portion of the performance of the transaction at issue was to take place in this jurisdiction.

8.     Exercise of jurisdiction in this suit comports with the due process requirements of the U.S. Constitution.

9.     Venue is proper in this Court under 28 U.S.C. § 1391(a) because a

substantial portion of the events, or omissions, giving rise to Plaintiffs' claims occurred in the State of Texas and in this judicial district.

## FACTUAL BACKGROUND

10.    Manila is in the domain name registration and monetization business. To build an Internet domain name portfolio, Manila initially used proprietary computer software licensed from Netsphere to automatically identify and register popular generic and descriptive words and word combinations as Internet domain names.    Manila was the owner and registrant-of-record and Netsphere was the exclusive licensee of several hundred thousand of these automatically-registered domain names.

11.    Pursuant to the license, Netsphere monetizes Manila's domain names by operating webpages associated with the domain names that contain advertising links.    Advertisers pay a small fee every time a user clicks on one of the advertising links.    This arrangement is referred to as "domain name parking." Even though the individual click-through fee paid by advertisers is very small, the aggregate revenue is significant due to the sheer number of domain names in Manila's portfolio.

12.    Ondova is a licensed bulk domain name registrar and is in the business of registering domain names to customers throughout the United States through its interactive website at www.budgetnames.com.  Plaintiffs are informed and believe and based thereon allege that Baron is the alter ego of Ondova, and Baron is therefore liable for the acts of Ondova.  Recognition of the privilege of separate existence would promote injustice and a fraud against the Plaintiffs because Baron in bad faith dominated and controlled Ondova as follows:   a). Baron is the president and sole owner, employee, officer and/or director of Ondova; b).  Baron has commingled funds and other assets of Ondova for his own

convenience and to assist in evading legal obligations; c). Baron has failed to adhere to corporate formalities for Ondova, namely he has failed to maintain minutes and/or adequate records of Ondova; d). Baron has diverted funds and other assets of Ondova to other than corporate uses; e). Baron has used Ondova as a mere shell, instrumentality, or conduit for his domain name business; f). Baron has diverted assets from Ondova to himself to the detriment of creditors, including the Plaintiffs; and g). Baron contracted with Plaintiffs with the intent to avoid performance by use of the corporate entity of Ondova as a shield against personal liability.

13.    Manila's domain names are associated with a particular nameserver and IP address.  When a user enters one of Manila's domain names in a web browser, the nameserver associated with that domain name directs Internet users to the website established by Netsphere.   The identification of the nameserver and IP address is critical to ensuring traffic is directed to a specific website so that Netsphere and Manila can generate revenue.  In the past, Manila (as registrant) has provided information to Ondova (as registrar) regarding where the nameserver should direct traffic and Ondova has complied with Manila's instructions regarding designation of the proper nameserver and IP address.

14.    Based on their registrar-registrant relationship, in 2005 Baron initiated discussions with Manila's principal, Krishan, regarding a possible joint business opportunity.  Although preliminary steps were taken, the joint business between the Netsphere Parties and Defendants was never consummated.

15.    A dispute arose between the Netsphere Parties and Defendants regarding the ownership of Manila's domain names (hereinafter the "Manila Domain Names").  Despite the fact that a joint venture was never finalized, Defendants claimed that they were entitled to half of the Manila Domain Names. As a result, and because he had the control to do so, Baron engaged in improper

"self-help" with regards to the Manila Domain Names. Specifically, on November 13, 2006, without warning and without Manila's permission, Baron and Ondova changed the IP addresses/Nameservers for the Manila Domain Names from the IP addresses/Nameservers selected by Manila to new IP addresses/Nameservers selected unilaterally by Ondova, via its registrar interface with VeriSign[1]. By improperly changing the IP addresses/Nameservers for the Manila Domain Names, Ondova diverted Manila's web traffic from the pages operated by Netsphere and its ad provider to pages operated by a different domain parking provider. As a result, the Netsphere Parties no longer had, or have, control of the content of the webpages or the revenue generated therefrom.

16.    Manila instructed the Defendants to take corrective action to direct the Manila Domain Names back to their original IP address/Nameserver so that the domain names are properly associated with Netsphere and the ad provider it has engaged. Nevertheless, the Defendants refused to return the Manila Domain Names or to cooperate in requiring the parking companies with whom the Defendants had engaged to pay the Netsphere Parties their share of the revenues.

17.    On or about November 15, 2006, Manila, Netsphere and Krishan filed an Original Complaint in the United States District Court for the Central District of California, captioned *Manila Industries Inc., et al. v. Ondova Limited Co. d/b/a Ondova LLC, et al.*, (No. SACV06-1105 AG) (the "Cal. Conversion Case") for Conversion and seeking a Declaratory Judgment as to the ownership rights to the Manila Domain Names, as well as other domain names originally owned by Ondova ("Ondova Domain Names")(the Manila Domain Names and Ondova Domain Names are collectively referred to as the "Domain Name Portfolio").

18.    On or about November 14, 2006, Ondova filed its Original Petition

---

[1] VeriSign is the .com/.net registry operator.

for Declaratory Judgment in the 68th District Court, Dallas County, Texas, captioned *Ondova Limited Company v. Manila Industries, Inc., et al.* (Cause No. 06-11717)(the "TX DJ Case") also seeking a determination of the rights of the parties with regard to the Domain Name Portfolio.  The Cal. Conversion Case and the TX DJ Case are collectively referred to herein as the "Litigation".

19.  On or about April 26, 2009, after months of negotiations and numerous days of private mediations, the Netsphere Parties and the Defendants entered into a settlement agreement to dispose of the Litigation, all material terms of which were memorialized in a confidential writing (the "Settlement Agreement").  The Settlement Agreement expressly states that it is intended to be a "full and final settlement agreement containing all material terms."  Pursuant to the confidential terms of the Settlement Agreement, certain events were to be completed, by certain deadlines, prior to the dismissal of the Litigation.

20.  Pursuant to the Settlement Agreement, the Manila Domain Names were to be divided among the Netsphere Parties and the Defendants, which division was to be determined by a specific procedure set forth in detail in the confidential Settlement Agreement (the "Division").   The Division was to be completed no later than May 10, 2009, fourteen (14) days after the execution of the Settlement Agreement.

21.  On April 28, 2009, the Netsphere Parties timely performed under the Settlement Agreement and provided the Division, consisting of two lists of domain names, to the Defendants.  Despite this fact, the Defendants have refused to rely on the Division in effectuating a transfer of the Netsphere Parties' share of the Manila Domain Names and have even failed to provide a reasonable alternative Division.

22.  Pursuant to the Settlement Agreement, the parties were also required to execute an Agreed Order, within ten (10) days of the settlement, wherein the Court would instruct VeriSign to effectuate the transfer of the Netsphere Parties'

share of the Manila Domain Names to the registrar designated by Manila. Although the Netsphere Parties prepared and presented the Agreed Order to the Defendants on April 28, 2009, the Defendants refused, and continue to refuse, to execute the Order, or otherwise cooperate in having it issued by the Court.

23.     To date, the Defendants have failed to perform under the Settlement Agreement and maintain possession and sole control over all of the Manila Domain Names to the detriment of the Netsphere Parties.

## FIRST CLAIM FOR RELIEF

### Specific Performance of Contract (Settlement Agreement)

24.     Plaintiffs hereby incorporate the allegations of the preceding paragraphs of this Complaint.

25.     On or about April 26, 2009, the Netsphere Parties and Defendants entered into the written Settlement Agreement.  Pursuant to the Settlement Agreement, the Netsphere Parties and Defendants were to cooperate in completing the Division of the Manila Domain Names.

26.     Consideration exchanged under the Settlement Agreement was just and reasonable and as set forth in the confidential Settlement Agreement.

27.     The Netsphere Parties have presented, and continue to present, to Defendants the Division in accordance with the Settlement Agreement.  The Netsphere Parties were at all times, and still are, ready, willing and able to perform all conditions required by them remaining to be performed under the Settlement Agreement.

28.     Defendants have failed and refused, and continue to fail and refuse, to perform their obligations under the Settlement Agreement.  Specifically, the Defendants have failed to cooperate in the Division of the Manila Domain Names, and instead refute the Division presented to them by the Netsphere Parties in

accordance with the terms of the Settlement Agreement.   The Defendants have further breached under the terms of the Settlement Agreement by failing to execute the Agreed Order, wherein the Court would instruct VeriSign to effectuate the transfer of the Netsphere Parties' share of the Manila Domain Names to the registrar designated by Manila.

29.   For the reasons heretofore stated, the Netsphere Parties have no adequate legal remedy in that domain names are a unique property, and damages will be inadequate to compensate the Netsphere Parties for the detriment suffered by them.

## SECOND CLAIM FOR RELIEF

### Breach of Written Contract (Settlement Agreement)

30.   Plaintiffs hereby incorporate the allegations of the paragraphs 1 through 23 of this Complaint.

31.   On or about April 26, 2009, the Netsphere Parties and Defendants entered into the Settlement Agreement.

32.   Pursuant to the terms of the Settlement Agreement, the parties were obligated to participate in the Division of the Manila Domain Names no later than fourteen (14) days after the date Settlement Agreement was executed.   The Netsphere Parties have cooperated and have acted in good faith by preparing the Division and presenting it to the Defendants on April 28, 2009.

33.   The Defendants have breached the Settlement Agreement, by refusing to cooperate with the Netsphere Parties in meeting the conditions precedent to the ultimate dismissal of the Litigation.   Specifically, the Defendants have: a). refused to accept the Division prepared by the Netsphere Parties in accordance with the terms of the Settlement Agreement; b). refused to execute and submit the Agreed

Order, wherein the Court would instruct VeriSign to make the transfer of the Netsphere Parties' share of the Manila Domain Names to the registrar designated by Manila; and c). refused to cooperate in requiring the parking companies with whom the Defendants have engaged to pay the Netsphere Parties their share of the revenues.

34.     The Netsphere Parties have performed all of their duties and obligations pursuant to the Settlement Agreement.

35.     The Defendants have refused all of the Netsphere Parties' demands to cooperate in the Division of the Manila Domain Names or to pay the Netsphere Parties' share of revenues therefrom.

36.     As a result of the foregoing, the Netsphere Parties have been damaged in the amount of its share of revenues from the Manila Domain Names, the exact amount of which is not known to the Netsphere Parties until and unless an accounting of those revenues is received from the Defendants.

## THIRD CLAIM FOR RELIEF

### Conversion of Manila's Domain Names, Accounting and Constructive Trust

37.     Plaintiffs hereby incorporate the allegations of the preceding paragraphs of this Complaint.

38.     Pursuant to the Settlement Agreement, Manila is entitled to be the registrant and sole owner of all rights (subject to Netsphere's license), title, and interest in its share of the Manila Domain Names. Netsphere, as Manila's exclusive licensee, has the right to possess and use those Manila Domain Names and park them with its parking service and the ad provider it has engaged.

39.     Without authorization from the Netsphere Parties, the Defendants directed all of the Manila Domain Names to IP addresses/Nameservers different than those chosen by Manila and which are associated with parking services with

which the Netsphere Parties have no contractual relationship. The Defendants have agreed pursuant to the Settlement Agreement, to divide the Manila Domain Names with the Netsphere Parties and to execute an Agreed Order, wherein the Court would instruct VeriSign to effectuate the transfer of the Netsphere Parties' share of the Manila Domain Names to a registrar designated by Manila.

40.     The Defendants have failed to comply with the terms of the Settlement Agreement and have refused all of the Netsphere Parties' demands to cooperate in the return of the Manila Domain Names to Netsphere's IP addresses/Nameservers.

41.     The Defendants' actions constitute conversion of the Netsphere Parties' share of the Manila Domain Names and the revenue generated therefrom. The Defendants, and each of them, have assumed and exercised dominion and control over the Manila Domain Names in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Manila's and Netsphere's rights.

42.     The Defendants will continue their conversion of the Netsphere Parties' share of the Manila Domain Names, and revenue therefrom, if not restrained and enjoined by the Court.

43.     As a direct and proximate result of the above-described actions, the Netsphere Parties are being damaged by loss of revenues, loss of profits and loss of good will. The Netsphere Parties have no way of quantifying those revenues without an accounting by the Defendants.

44.     The Netsphere Parties are entitled to a judgment that the actions of the Defendants constitute conversion and are entitled to have their assets returned.

45.     The Netsphere Parties are entitled to an accounting of the revenues generated by the conversion and imposition of a constructive trust over those improperly collected revenues for the benefit of the Netsphere Parties.

46.     The actions of the Defendants have been willful and with malice.

47.   The Netsphere Parties are entitled to an award of exemplary damages.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

48.   Plaintiffs hereby incorporate the allegations of the preceding paragraphs of this Complaint.

49.   As a result of the Defendants' refusal to redirect any of the Manila Domain Names to the Netsphere Parties, or their designees, or to release any portion of the revenues it has collected from the Manila Domain Names, the Defendants, and each of them, have been unjustly enriched to the detriment of the Netsphere Parties.

50.   The Netsphere Parties are entitled to restitution from the Defendants in an amount to be proven at trial.

## PRAYER

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1.   Granting an order for specific performance of the Settlement Agreement, requiring that the Defendants:

  a. proceed with the Division as circulated by the Netsphere Parties using the methodology set forth in the Settlement Agreement;

  b. execute and submit to the Court the Agreed Order, wherein the Court will instruct VeriSign to effectuate the transfer of the Netsphere Parties' share of the Manila Domain Names to a registrar designated by Manila; and

  c. otherwise comply with the terms of the Settlement Agreement;

2.     Imposing a constructive trust for the benefit of the Netsphere Parties over all revenue generated by Defendants through their unlawful conversion of the Netsphere Parties' domain names and ordering an accounting of all such revenues;

3.     Granting Netsphere Parties all monetary relief appropriate, including damages caused by Defendants' wrongful conduct, pre- and post- judgment interest where applicable, and appropriate exemplary damages;

4.     Granting Netsphere Parties their costs, attorneys' fees, and such other relief, in equity or at law, including temporarily restraining and enjoining Defendants from further violations of the Settlement Agreement and the Netsphere Parties' rights, as to which they are entitled and the Court deems just; and

5.     Ordering the Defendants to pay restitution to the Netsphere Parties in an amount equal to their unjust enrichment from the unlawful use of the Netsphere Parties' domain names.

Dated: May, 28ᵗʰ, 2009                Respectfully submitted,

_____
John W. MacPete
State Bar No.  00791156
LOCKE LORD BISSELL &
LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8662
(214) 740-8800 (Fax)

ATTORNEYS FOR PLAINTIFFS
MANILA INDUSTRIES, INC.,
NETSPHERE, INC. and MUNISH
KRISHAN

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated:  May, _28th_, 2009          Respectfully submitted,


_[signature]_

John W. MacPete
State Bar No.  00791156
LOCKE LORD BISSELL &
LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8662
(214) 740-8800 (Fax)

ATTORNEYS FOR PLAINTIFFS
MANILA INDUSTRIES, INC.,
NETSPHERE, INC. and MUNISH
KRISHAN

JS 44   (Rev. 12/07)   **ORIGINAL**   **CIVIL COVER SHEET** 3-09CV0988-F

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| NETSPHERE, INC., MANILA INDUSTRIES, INC., and MUNISH KRISHAN | JEFFREY BARON and ONDOVA LIMITED COMPANY |

**(b)** County of Residence of First Listed Plaintiff  ORANGE (CA.)
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  DALLAS
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
LOCKE LORD BISSELL & LIDDELL LLP, 2200 Ross Avenue, Suite 2200, Dallas, Texas 75201 (214)740-8000

Attorneys (If Known)

RECEIVED

BY

28

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. sec. 1332 and 28 U.S.C. Sec. 1391(a)
Brief description of cause:
Breach of Contract

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 75,000.00   CHECK YES only if demanded in complaint:   JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**   (See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
05/28/2009

SIGNATURE OF ATTORNEY OF RECORD
John Mc Petu

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____