UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NETSPHERE, INC., et al., | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO.: 3-09CV0988-F |
| | § § | |
| JEFFREY BARON, et al., | § § | |
| Defendants. | § § § § | |

## PLAINTIFFS' MOTION ON DEFENDANTS' CONTEMPT OF COURT

Plaintiffs, Netsphere, Inc. ("Netsphere"), Manila Industries, Inc. ("Manila") and Munish Krishan ("Krishan") (collectively "Plaintiffs" or "Netsphere Parties"), hereby move this Honorable Court for an Order to hold Defendants Jeffrey Baron ("Baron") and Ondova Limited Company ("Ondova") (Baron and Ondova are collectively referred to as the "Defendants") in civil contempt for multiple violations of this Court's Orders, and in support of same state as follows:

## Table of Contents

**DEFENDANTS ARE IN CONTEMPT**......................................................................................4

**ARGUMENT**.................................................................................................................................4

    **A. Factual Background**......................................................................................................4

    **B.  Defendants Violations of the Order**...........................................................................6

    **C.  Defendants Violations of the Preliminary Injunction and Amendment** ....................12

    **D.  Conclusion and Calculations** ........................................................................................14

**CERTIFICATE OF CONFERENCE**........................................................................................18

**CERTIFICATE OF SERVICE** ................................................................................................19

## Table of Authorities

**Cases**

*Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511, 514 (5th Cir. 1985)............11

*Compaq Computer Corp. v. Ergonome, Inc.*, 387 F.3d 403 (5th Cir. 2004) ..........12

*Federal Maritime Com'n v. South Carolina State Ports Authority*, 535 U.S. 743, 758 (2002).................................................................................................... 4

*Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992) ............................... 4

*McLeod, Alezander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482 (5th Cir. 1990)...........................................................................................................11

Rule 37(b)(2) ........................................................................................................ 4

Rule Civ. Proc. R. 37(b)(2) ................................................................................. 4

*Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958) ...................................................................................11

*Technical Chemical Co. v. Ig-Lo Products Corp*. 812 F. 2d 222 (5th Cir. 1987)....11

*Technical Chemical Co. v. IG-LO Products Corp.*, 812 F.2d 222, 224 (5th Cir. 1987)...........................................................................................................10

*United States v. 49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003) ....................11

*Whitcraft v. Brown*, 2009 U.S. App. LEXIS 11740 (5th Cir. Tex. May 29, 2009)... 4

**STATUES**

Fed. Rule Civ. Proc. R. 37(b)(2)................................................................................4

**DEFENDANTS ARE IN CONTEMPT**

Defendants have clearly and blatantly violated this Court's Orders, despite clear warnings and predetermined sanctions set forth by this Court for any such behavior. "A party failing to obey discovery orders … is subject to a variety of sanctions, including the entry of default judgment." *Federal Maritime Com'n v. South Carolina State Ports Authority*, 535 U.S. 743, 758 (2002). Rule 37(b)(2) provides that if a party or a party's officer, director, or managing agent "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following: (i) directing that . . . designated facts be taken as established for purposes of the action. . . (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; . . . (vi) rendering a default judgment against the disobedient party; and (vii) treating as contempt of court the failure to obey any order. . . ". Rule Civ. Proc. R. 37(b)(2). A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the [Defendants], and 3) that the [Defendants] failed to comply with the court's order." *Whitcraft v. Brown*, 2009 U.S. App. LEXIS 11740 (5th Cir. Tex. May 29, 2009); *citing*, *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). As set forth below the Plaintiffs clearly meet their burden of establishing that the Defendants are in contempt of this Court's Orders.

**ARGUMENT**

**A. Factual Background**

Concerned about the potential deletion of valuable domain names and the possible spoliation of evidence, the Plaintiffs' sought a temporary restraining order ("TRO") from this Court. The Court issued a TRO on June 12, 2009 which included, at the request of the

Defendants, an order that the parties engage in expedited discovery on three days notice, including the depositions of the parties and the production of documents. *See* Docket No. 19. Despite the fact that it was the Defendants who sought the expedited discovery on three days notice, they failed to properly respond to Plaintiff's discovery requests, timely served under the provisions of the TRO. As this Court has already found, Plaintiff timely served Notices of Deposition Duces Tecum for Defendants Baron and Ondova on June 15, 2009, and "Defendant Baron failed and refused to provide all documents responsive to Plaintiffs' requests." Order on Expedited Discovery ("Order"), Docket No. 19 at page 1. The Order was entered as a result of this Court's finding of Defendants failure to comply and, as set forth in detail below, there are multiple violations of this Order by the Defendants.

In addition to the failure to comply with the Court's Order, Defendants have failed to comply with the Court's Preliminary Injunction. On June 26, 2009, this Court entered a Preliminary Injunction mandating performance of certain provisions of the settlement agreement between the parties (the "Memorandum of Understanding"). Docket No. 22. Defendants consented to that Preliminary Injunction. The parties obligations under the Preliminary Injunction included the division of the domain names registered by the Netsphere Parties (the "Netsphere Portfolio"); the transfer to the Netsphere Parties of their portion of the domain names; the distribution of certain monetization revenues; and, that Defendants engage a third party service to create an image of all Defendants' WHOIS-related documents as a result of the Defendants' prior failure to produce those documents in connection with the noticed depositions. As set forth below, Defendants failed to timely comply with provisions of the Preliminary Injunction.

Finally, Defendants have also failed to comply with the Amendment to the Preliminary Injunction. On July 6, 2009, this Court entered the Amendment to Preliminary Injunction ("Amendment") amending the Preliminary Injunction of June 26, 2009. Docket No. 30. The Amendment, among other things, moved the Netsphere Parties' deadline to identify the nameserver(s) from July 2, 2009 to July 3, 2009; and moved the deadline for Ondova to point the Netsphere Portfolio to said identified nameserver(s) from July 3, 2009 to July 6, 2009. Docket No. 30, at 1.

As detailed below, Defendant has failed to comply with certain provisions of the Order, the Preliminary Injunction, and the Amendment, despite clear and direct warnings from this Court against violating its authority. This blatant disregard for this Court's authority, and ignoring the mandatory orders and injunctions entered by this Court against the parties in this matter warrants severe sanctions.

### B.  Defendants Violations of the Order

The first numbered paragraph of the Order provides in pertinent part that the "Defendants shall produce all WHOIS records for every domain name registered with Ondova to Plaintiff's in electronic form…" Docket No. 19. The sixth numbered paragraph sets forth the time and date by which Defendants must comply with the first four numbered paragraphs—to wit, 4 p.m. Tuesday June 23, 2009. Id. Despite this clear direction, Defendants failed to comply. *See* MacPete Dec. at ¶ 4, Appendix p. 2 ("App."). Shockingly, what Defendants did eventually produce after the close of business on June 23rd was an altered file that had had critical information deleted from it prior to production. Id. at 5, App. p. 2. The file provided by the Defendants' containing the WHOIS database had the creation date field (column No. 5) deleted from it, thereby eliminating the creation date from every single record. Id, App. p. 2. There is no question that the creation

date is part of the WHOIS records maintained by Ondova as evidenced by a printout of the WHOIS information for any domain name registered at Ondova – the creation date is the first piece of information listed.  *See* <u>MacPete Dec. at 5, App. p. 2</u>.  The creation date, as previously stated to the Court, is a crucial piece of information needed to sort out which domain names registered at Ondova are subject to the Settlement Agreement.  Defendants' alteration of a record prior to its production in discovery is beyond the bounds of permissible behavior in discovery and is an attack on our very system itself.  Our civil discovery system is predicated on the idea that parties will act honorably to fulfill their obligations to produce documents as requested in unaltered form and regardless of whether those documents help or harm the parties' cause.  Defendants have shattered that important trust.  It is imperative to preserve the integrity of that system, that violations of such trust be dealt with swiftly and with overwhelming force.  The need for a severe penalty to establish appropriate boundaries of behavior is particularly critical here as a result of: (i) Defendants' history of inappropriate self help; (ii) Defendants' continuing non-compliance with other orders as set forth below; and (iii) the particularly callous disregard Defendants have shown for the rules and this Court given that Defendant altered the WHOIS records after <u>Judge Lynn specifically and clearly ordered that the Defendant was "prohibited from altering or modifying in any way the 'WHOIS' information" and stated that she would "deal with [any violation of the TRO] as severely as the law would allow."</u>   TRO at ¶ (4) and Transcript of TRO hearing at 41:14-16 (emphasis added).  Any possible question concerning whether Defendants willfully violated the TRO and the Order by altering the WHOIS database that was produced to Plaintiffs was eliminated as a result of the production of the image of the WHOIS-related documents created by the third party company pursuant to the Preliminary Injunction.  That image contained the altered database with 47 fields (missing the creation date

field and the domain id field) and next to it, the unaltered database containing 49 fields, including the creation date field and the domain id field. Aggarwal Dec. at 2, App. p. 39.

The second numbered paragraph of the Order provides that the "Defendants shall produce all documents related to the monetization of all of the domain names registered at Ondova." Docket No. 19. These documents were also ordered to be produced by 4pm on June 23, 2009. Id. at ¶ (6). Again, Defendants failed to comply. Defendants have not produced necessary and basic documents such as email correspondence, checks or other payment records from the monetization companies, or even the contracts Defendants had with the monetization companies. See MacPete Dec. at ¶ 6, App. p. 2. Despite repeated oral requests from Plaintiffs' counsel, none of these documents have ever been produced.[1]

The third numbered paragraph of the Order provides that "Defendants shall produce the list of all domain names registered at Ondova that they deleted or allowed to expire or transferred after April 26, 2009…" Docket No. 19. The deadline was 4pm on June 23rd, 2009. Id. at ¶ (6). Yet again, Defendants failed to comply. Defendants failed to produce a complete electronic list of the deleted, expired or transferred domain names by 4pm on June 23rd, 2009. This was certainly not the first time. Defendants also failed to provide a list of the deleted expired or transferred domain names under oath as ordered in the TRO (TRO p. 3), and at the hearing on June 19th—which was ultimately reduced to writing in the Order. Defendants finally produced an unsworn electronic list purporting to be of all the deleted domain names on the afternoon of June 24th. However, on June 25th, Defendants' counsel indicated that the list produced the day before was not a complete list and would need to be supplemented. See MacPete Dec. at ¶ 7,

---

[1] Well after the deadline in the Order, and pursuant to specific provisions in the Amendment to the Preliminary Injunction, Defendants have produced a database file containing financial information about the deleted domain names and some of the passwords for monetization accounts.

App. p. 2. Accordingly, the Preliminary Injunction provided that Defendants' counsel would supplement the list by noon on June 26th under oath. Footnote 2 of the Preliminary Injunction, specifically noted that the fact that the list was being supplemented <u>did not cure the Defendants' failure</u> to produce the list electronically and under oath as required in the TRO and the Order on Expedited Discovery. On June 26th, Defendants finally produced the electronic list of the deleted names under oath.

On June 23rd, Defendants also failed to produce the records or financial reports related to the deleted domain names as required by the Order <u>Docket No. 19</u> at ¶ 3. Despite repeated requests from Plaintiffs' counsel, Defendants did not produce the financial records for the deleted domain names. *See* <u>MacPete Dec. at ¶ 8, App. p. 3</u>. Because the information was desperately needed by Plaintiffs to determine which deleted domain names should be undeleted (those with value), Plaintiffs asked this Court for help in the form of yet another order directing the production. At the hearing on July 1st, <u>this Court again ordered that Defendants should produce all such records</u> and required the production by July 3rd at 5 pm.[2] On July 3rd, although Defendants produced a password-protected Macintosh database file after 5:30 pm with the required information, Defendants 1) failed to identify the program needed to open the file and 2) failed to provide the password. As a result, Plaintiffs were unable to open the file on July 3rd and 4th, despite repeated efforts. On July 5th, Defendants' computer consultant finally was able to identify the correct program to open the file and later was able to secure the password for the file from Mr. Baron and produced it to Plaintiffs.

---

[2] At a subsequent telephone hearing, this Court modified the deadline for the production required by paragraph 13 of the Amendment to the Preliminary Injunction to July 6th from July 3rd.

PLAINTIFFS' MOTION ON DEFENDANTS' CONTEMPT OF COURT  **Page 9**

The fourth numbered paragraph of the Order provides that "Defendants shall produce all documents responsive to Plaintiffs' request nos. 14-15 to Jeffrey Baron and Plaintiffs' request nos. 12-13 to Ondova Ltd." Docket No. 19. The requests referenced in the Order are as follows:

> 12/14  Produce any and all documents regarding communication between [you/Ondova] and any third party (excluding [] legal counsel) relating to the Memorandum of Understanding executed by you on April 26, 2009; and
>
> 13/15  Produce any and all documents regarding [your/Ondova's] performance or non-performance of the Memorandum of Understanding executed by you on April 26, 2009.

The categories of documents this Court ordered Defendants to produce necessarily would include the following:

- an email from Jerry Mason (Ondova's general counsel) to John MacPete discussing the Memorandum of Understanding (stating "This case is settled."); and

- an email from Jerry Mason to Frank Herrera providing "auth" codes for domain names to be transferred to third-party trademark owners as required by paragraph 7 of the Memorandum of Understanding. App. p. 6-9.

However, Defendants did not, and have not produced these or any other emails or any other responsive documents, despite repeated requests from Plaintiffs' counsel. See MacPete Dec. at ¶ 9-10, App. p. 3.

Based upon Defendants multiple and continuing failure to produce the documents as required by the Order (and TRO), and other gamesmanship by the Defendants, this Court could render a default judgment against the Defendants. It is well-settled that entry of a default judgment is an appropriate sanction when the disobedient party has failed to comply with a court order because of willfulness, bad faith, or other fault on its part, as opposed to its inability to comply with the court's order. *Technical Chemical Co. v. IG-LO Products Corp.*, 812 F.2d 222, 224 (5th Cir. 1987), citing *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087,

1095, 2 L.Ed.2d 1255 (1958); *Batson v. Neal Spelce Associates, Inc*., 765 F.2d 511, 514 (5th Cir. 1985). For the Court to award a default judgment as a discovery sanction, two criteria must be met: "First, the penalized party's discovery violation must be willful." *United States v. 49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). "Also, the drastic measure is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect." *Id*.

In the instant case, judgment by default would be warranted. As set forth above, the Defendants' repeated and continuous disobedience has been willful. Without any justification, the Defendants have failed to comply with Plaintiffs' written document requests, the TRO and the Order (among other Court Orders). In fact, the Defendants have attempted to perpetrate a fraud on the Plaintiffs and this Court by the alteration of discovery that it did produce (i.e. the WHOIS information). Courts in the Fifth Circuit have granted default judgments in less egregious circumstances. (*See e.g. Technical Chemical Co. v. Ig-Lo Products Corp*. 812 F. 2d 222 (5th Cir. 1987); where a default judgment was upheld against a party appearing *pro se* and who, without a plausible excuse, twice disobeyed explicit court orders to appear for his deposition; and *McLeod, Alezander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482 (5th Cir. 1990); where default judgment was upheld against defendant where he failed to respond to written discovery requests and then failed to comply with an Order from the magistrate ordering specific compliance).

**Nevertheless, Plaintiffs are not asking for a default judgment at this time.** Specifically, this Court has already ordered that a violation of any provision of any Order of this Court will result in penalties of $50,000.00 per day until cured. Docket No. 30. Although the Defendants have breached numerous provisions of several of this Court's Orders, and demand has been made upon the Defendants for payment, no penalties have been paid by the Defendants

and they continue to be in violation of numerous Orders. *See* MacPete Dec. at ¶ 11, App. p. 3. Accordingly, Plaintiffs are requesting that this Court enforce its order for monetary penalties and to grant the following evidentiary sanctions:

> A. Prohibiting the Defendants from introducing any evidence opposing Plaintiffs' claims for damages (for Defendants failure to provide accurate accountings, all documents relating to the monetization of the Manila Portfolio as well as all valid access codes to the accounts at parking companies so that damages could be accurately calculated);
>
> B. Prohibiting the Defendants from introducing any evidence refuting Plaintiffs' definition of the "Manila Portfolio" (for Defendants violation of the Orders by altering the WHOIS information);
>
> C. Directing the fact that the Settlement Agreement is a full, final and binding agreement be taken as established for purposes of this action (for Defendants' failure to provide any documents relating to their performance or non-performance of the Settlement Agreement); and
>
> D. Deeming Jeffrey Baron as the alter ego of Ondova Company Limited. *See for example Compaq Computer Corp. v. Ergonome, Inc.*, 387 F.3d 403 (5th Cir. 2004)( deeming book's author to be alter ego of publisher as sanction for repeated discovery violations).

**C.  Defendants Violations of the Preliminary Injunction and Amendment**

This Court entered a Preliminary Injunction in this matter on June 26, 2009. Docket No. 22. An Amendment to Preliminary Injunction ("Amendment") was filed on July 6, 2009. Docket No. 30. Defendants consented to the Preliminary Injunction. Unfortunately, despite concessions, extensions, and continued patience by both the Court and the Plaintiff, Defendants

have chosen to test this Court by failing to comply with their obligations yet again. And, this Court explicitly warned the Defendant, in person, that continued failure to abide by this Court's orders would result in a penalty of $50,000 per day, and later reiterated this warning in the Amendment to Preliminary Injunction. Docket No. 30 at ¶ 15.

The Preliminary Injunction provides in part that: "[b]y 5 p.m. on July 2, 2009, the Netsphere Parties shall identify a set of nameserver(s) to which Ondova shall point the Netsphere Portfolio. By 5 p.m. on July 3, 2009, Defendants shall point the Netsphere Portfolio to the set of nameserver(s) identified by the Netsphere Parties." Docket No. 22 at ¶ 4. These dates were modified under the Amendment and were changed to July 3rd and July 6th respectively. Plaintiffs identified the nameserver(s) to which Ondova was required to point the Netsphere Portfolio on July 3, 2009 *See* MacPete Dec. at ¶ 12. Given this information, the Defendants failed to point the entire Netsphere Portfolio to the identified nameserver(s) by 5 p.m. on July 6, 2009, in violation of the Amendment. In an attempt to be as reasonable as possible, Plaintiffs (through their counsel) orally agreed that substantial compliance would be acceptable *if* Defendants fully and completely complied on the following day (July 7, 2009). *See* MacPete Dec. at ¶ 14, App. p. 4. Even then, the Defendants failed to fully and completely comply on the following day. Id. Approximately 4,840 domain names remained out of compliance, and did not point to the identified nameserver until one week later, after 4 p.m. CST on July 13, 2009. *See* Aggarwal Dec. at 4, App. p. 40.

The Amendment further provides in pertinent part that "Defendants shall provide the on-line logins/access codes/passwords for all monetization accounts for any domain names registered at Ondova at any time, specifically including but not limited to, the on-line login/access codes/passwords for [the monetization companies] or provide a detailed explanation

to why Defendants are unable to provide such information." Docket No. 30 ¶ 11. Pursuant to the Amendment these access codes are to be provided to the Netsphere Parties no later than July 6, 2009 at 5 p.m. Id. at ¶ 14.

Here again, the Defendants failed to comply. See MacPete Dec. at ¶ 15, App. p. 4. Specifically, the Plaintiffs have determined that the Defendants have failed to provide any on-line logins/access codes/passwords for at least the Sendori and Firstlook accounts. See Aggarwal Dec. at ¶ 5, App. p. 40. (attaching documents reflecting that: Sendori is a monetization company; that the domain name <Bob-interactive.com> is parked with Sendori; and that Ondova is the registrar for the domain name <Bob-interactive.com> and stating that access codes to at least one of the Firstlook accounts was not provided).

It should be also noted that invalid usernames and passwords for three other accounts were initially provided, but valid access codes to said accounts (i.e. Parked.com, Sedo, and DomainSponsor.com) were eventually provided on July 14, 2009. See Aggarwal Dec. at ¶ 6, App. p. 40. (attaching documents reflecting the results when Plaintiffs attempted to use the invalid usernames and passwords initially provided by the Defendants to access Parked.com, Sedo and DomainSponsor.com).

### D. Conclusion and Calculations

This Court has specifically warned the Defendant, both verbally in person, and in various documents, that disregard for this Court's orders and authority will not be tolerated. For example, the Amendment to Preliminary Injunction provides that: if "Defendants fail to comply with any provision of the Preliminary Injunction as amended or any other Order of this Court during a business day, then for each provision violated, Defendants shall pay a fine in the amount of fifty thousand dollars ($50,000 US) to be wired to the trust account of Plaintiffs' counsel

within 24 hours of said violation. A new fifty thousand dollar fine shall be paid for each business day Defendants remain in violation and for each separate violation of the Preliminary Injunction as amended or any other Order of this Court." Docket No. 30 at ¶ 16.

The Defendants violated the Amendment by failing to pay the fine in the amount of fifty thousand dollars ($50,000 US), per provision violated, within 24 hours of said violations. Pursuant to the Amendment, the Defendants are required to pay:

    a. $50,000 per business day for violating the fourth numbered paragraph of the Preliminary Injunction (pointing Netsphere Portfolio to the nameserver), commencing July 7, 2009 through July 13, 2009 (7 days x $50,000 = 350,000.00).

    b. $50,000 per business day for violating the eleventh numbered paragraph of the Amendment (access codes), commencing July 7, 2009 through July 21, 2009 (11 days x $50,000 = 550,000.00).

    c. $50,000.00 per business day for violating the sixteenth paragraph of the Amendment by failing to pay the fines above commencing July 7, 2009 through July 21, (11 days x $50,000 = 550,000.00).

Therefore, as of close of business on July 21, 2009, the Defendants should have paid the sum of $1,450,000.00 to the trust account of Plaintiffs' counsel. Fines continue to accrue at the daily (business days) rate of $150,000.00 for the open violations. While the amount sought is significant, this Court specifically warned of contempt sanctions in the millions of dollars, and Defendant's counsel stated his belief that the domain name portfolio was worth tens of millions of dollars in profits annually. *See* Transcript, pp. 32 l. 1, App. p. 17; and pp. 108 l. 16, App. p. 36. **Nevertheless, Plaintiffs are not seeking imposition of the total amount of the fines**

**required by the Amendment.** Plaintiffs respectfully request that this Court award a contempt penalty in the amount of $400,000, calculated as $10,000 per day for the violation of paragraph 4 of the Preliminary Injunction and $30,000 per day for the violation of paragraph 11 of the Amendment to the Preliminary Injunction and no additional penalty for the violation of paragraph 16 of the Amendment to the Preliminary Injunction.

The law is clear, this Court's Orders are clear, and Plaintiffs have met their burden for the relief requested. As a result, Defendants should be held in civil contempt for violating this Court's explicit Orders, should be required to immediately cure the violations; and should be required to pay the fines as set forth therein. Additionally, Defendants should be ordered to pay Plaintiffs' costs and attorneys' fees for having to bring this Motion. Plaintiffs believe that this is a fair, reasonable and conservative remedy, given that it is well within this Court's powers to include dispositive action as a sanction, or deem all contested facts admitted in Plaintiffs' favor. Plaintiff is not seeking such remedy yet, but simply a portion of the remedy already set forth by this Court.

**WHEREFORE,** based upon the foregoing, Plaintiffs respectfully pray that this Honorable Court issue an Order holding Defendants in contempt for failing to comply with this Court's Orders of June 26, 2009 and as amended on July 6, 2009, and require that the Defendants immediately cure each of the violations.

Plaintiffs further pray that this Honorable Court impose a $400,000 (U.S.) fine for Defendants' violations and a per day fine of $40,000 from the date of any order on this Motion until those violations are cured. Plaintiffs further pray that this Court sanction Defendants for their willful disregard of this Court's Orders and award Plaintiffs costs and attorneys' fees, and

such other relief as justice dictates and as permitted by statute, court rules and relevant case law for having to bring this Motion.

Dated:  July 21, 2009                             Respectfully submitted,

                                          _____
                                          John W. MacPete
                                             State Bar No.  00791156
                                          Jason Mueller
                                           State Bar No.  24047571
                                          LOCKE LORD BISSELL &
                                          LIDDELL LLP
                                          2200 Ross Avenue, Suite 2200
                                          Dallas, Texas 75201
                                          (214) 740-8662
                                          (214) 740-8800 (Fax)

                                          ATTORNEYS FOR PLAINTIFFS
                                          MANILA INDUSTRIES, INC., NETSPHERE, INC. and MUNISH   KRISHAN

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he conferred with counsel for Defendants regarding the relief requested in this Motion. Counsel for the Defendants indicated that this Motion is OPPOSED.

_____
John MacPete

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record have been served with a copy of the foregoing via electronic mail on June 21, 2009.

                                                  /s/ John MacPete
                                                  John MacPete