IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NETSPHERE, INC., | § | |
| MANILA INDUSTRIES., INC., AND | § | |
| MUNISH KRISHNAN | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:09-CV-0988-F |
| | § | |
| JEFFREY BARON AND | § | |
| ONDOVA LIMITED COMPANY, | § | |
| | § | |
| DEFENDANTS. | § | |

## THE RECEIVER'S VERIFIED EMERGENCY MOTION TO ENFORCE STAY

### I.
### EXECUTIVE SUMMARY

The Receivership Order stays all legal proceedings with respect to the ownership of Receivership Assets. In violation of the stay, a legal proceeding commenced last week—a complaint under the Uniform Domain Dispute Resolution Policy (the "UDRP"), which is under the auspices of the Internet Corporation for Assigned Names and Numbers ("ICANN"). Specifically, the complaint challenges the ownership of the domain www.funnygames.com ("Funnygames"), which is one of the most valuable of the Receivership Assets—appraised at almost $400,000. The deadline for the Receiver to respond to the complaint is December 16, 2011. What are the Receiver's options?

- Option 1: If, on the one hand, the Receiver were to defend against the complaint, it would mean that this Court's stay as to legal proceedings would be vitiated, and the flood gates would open to countless other challenges. And these are not hypothetical challenges—there are literally dozens of complainants waiting for the stay to be lifted. The burden of defending against all of these UDRP actions would overwhelm the Receiver's limited budget.

- <u>Option 2</u>: If, on the other hand, the Receiver were not to defend against this complaint, it would mean that a default (albeit an illegal and improper one) will occur, thereby putting what might appear to be an encumbrance on this significant Receivership Asset.

To avoid being forced to make this Hobson's Choice, and because ICANN is apparently not recognizing this Court's stay, the Receiver seeks relief from this Court. Prior to the "default" date of December 16, 2011, the Receiver asks that the Court issue an order enforcing the stay and specifically instructing ICANN to abate the proceeding on Funnygames.

As a collateral issue, the Receiver understands that the Receivership, itself, is under a stay of sorts during the pendency of the appeal of the Receivership Order. Thus, the Court might be hesitant to issue any orders in this matter without first obtaining direct instruction from the Fifth Circuit. Nevertheless, Fifth Circuit authority on this issue is clear. Even during a district court's stay pending an appeal, the district court may issue orders regarding matters not involved in the appeal and for the goal of maintaining the status quo. That is precisely what the Receiver seeks, and that is why this Court may issue an order enforcing its stay without first receiving advanced approval from the Fifth Circuit.

## II.
## ARGUMENTS AND AUTHORITIES

### A.   Background.

*1.   Background of UDRP procedure.*

ICANN is a non-profit organization charged with insuring the security, stability, and operation of the internet including the registration of internet domain names. (*See* http://www.icann.org.) ICANN established the UDRP. (*See* http://www.icann.org/en/udrp.htm.) The UDRP allows the alleged holder of trademark rights an expedited process to resolve disputes over supposedly offending domain names. (*See* the *Declaration of Damon Nelson* attached here

to as Exhibit A at ¶ 24.) The complainant initiates the arbitration through filing a complaint with an ICANN-approved tribunal such as the World Intellectual Property Organization ("WIPO"). (*Id.*)

    2.   *Background of the ownership of Funnygames.*

       a.   <u>Funnygames is a Receivership Asset.</u>

The *Order Appointing Receiver* (the "Receiver Order") grants the Receiver "exclusive control" over certain "Receivership Parties" and all of the assets held by those Receivership Parties, *i.e.*, the "Receivership Assets." [Docket No. 124 at pp. 1-3.] On December 17, 2010, the Court issued a clarification order stating that "the Receiver's definition of Receivership Parties has always included Novo Point, LLC." [Docket No. 176.] Accordingly, the assets held Novo Point, LLC are Receivership Assets. One of these assets is Funnygames, a domain valued at almost $400,000. (*See* Exhibit A at ¶¶ 6, 22.)

       b.   <u>A UDRP action is proceeding as to the ownership of Funnygames.</u>

On November 16, 2011, a complainant filed a UDRP action with WIPO regarding Funnygames (the "Complaint"). (*Id.* at ¶ 23, Ex. 1.) The Complaint alleges that Funnygames infringes alleged trademark rights in violation of the UDRP and seeks its transfer from Novo Point to the complainant. (*Id.* at ¶ 25, Ex. 1.) As stated above, the deadline for the Receiver to respond to the Complaint is December 16, 2011. (*Id.* at ¶ 26, Ex. 1.)

**B.    The Receiver seeks an Order from this Court enforcing the UDRP Stay.**

Under the Receivership Order, all UDRP claims against domain names that are Receivership Assets are stayed during the pendency of the Receivership (the "UDRP Stay"). [Docket No. 124 at pp. 12-13 ("during the pendency of the receivership ordered herein, all other persons and entities . . . are hereby stayed from taking any action to establish or enforce any

claim, right, or interest . . . against . . . [a] Receivership Party [or] any of their . . . assets . . . including . . . [c]ommencing, prosecuting, continuing, entering, or enforcing any suit or proceeding . . ..").]

As described below, the Receiver is facing a Hobson's Choice of (1) disregarding the UDRP Stay and defending against the Complaint—and thereby opening up the floodgates to dozens of other UDRP proceedings, or (2) relying on the UDRP Stay and risk the issuance of a so-called "default" that would be improper and illegal, but nonetheless, possibly viewed by some as an encumbrance of Receiver's rights to Funnygames. Therefore, the Receiver seeks relief from the Court.

> 1.    *If the Receiver were to defend against the Complaint, the Receiver would open the floodgates to countless other UDRP actions.*

The Receiver has been threatened with literally dozens of UDRP actions. (Exhibit A at ¶ 27.) The only thing plugging up the dam and preventing the flood of the UDRP actions from proceeding is the UDRP Stay. (*Id.* at ¶ 28.) If the Receiver were to defend against the UDRP action relating to Funnygames, other complainants would argue that the UDRP Stay is not binding on them either. This would lead to the Receiver having to defend against countless claims and deplete his already-dwindling resources. [*See* Docket No. 707 (The Receiver's Notice of the Receivership's Projected Financial Picture as of November 30, 2011, showing, in worst case scenario, the Receivership could be in the red by approximately $900,000 by November 30, 2011).]

> 2.    *If the Receiver were not to defend the challenge, a so-called "default" might issue that might be viewed by some as an encumbrance of Receiver's rights to Funnygames.*

The Complaint is proceeding in front of WIPO. (Exhibit A at ¶ 23, Ex. 1.) When prior UDRP complaints were brought during the Receivership, the Receiver consistently alerted WIPO

to the UDRP Stay. (Exhibit A at ¶ 29.) In all instances, however, WIPO disregarded the Receivership Stay and issued so-called "defaults." (*Id.*) And while these "defaults" are all improper and illegal and should be held as void (which the Receiver will request through a separate non-emergent motion), they nonetheless might be viewed by some as an encumbrance of the Receiver's rights to those "defaulted" names.

In those prior instances, the domains being "defaulted," were valued at a fraction of Funnygames. (*Id.*) So, the Receiver—wishing not to permit even the ***appearance*** of an encumbrance upon one of the Receivership's most valuable assets—is concerned with having a "default" issue. But, as described above, defending against the claim will open up the floodgates of dozens of other UDRP claims. The Receiver is stuck in the middle—and therefore needs the Court to intervene and enforce the UDRP Stay.

**C.     Notwithstanding the stay of the Receivership, itself, this Court maintains jurisdiction to enforce the UDRP stay and maintain the status quo.**

A question this Court might be considering is whether it can enforce the UDRP Stay, even though the Receivership, itself, is under a stay of sorts pending appeal. The answer is "yes." Here is why.

The Fifth Circuit has ruled that an appeal's effect of divesting jurisdiction from a district court is not absolute. *Farmhand, Inc. v. Anel Eng'g Indus., Inc.*, 693 F.2d 1140, 1145 (5th Cir. 1982). "The district court maintains jurisdiction as to matters not involved in the appeal" and maintains a "continuing duty to maintain a status quo." *Id.* at 1145-46.

Here, the ownership of Funnygames is not at issue in any of Mr. Baron's appeals to the Fifth Circuit. [*See* Fifth Circuit Case Nos. 10-11202, 11-10113, 11-10289, 11-10290, 11-10390, and 11-10501.] Further, safeguarding the ownership over Funnygames as a Receivership Asset and enforcing the UDRP Stay preserves—rather than modifies—the status quo.

**D.      Request for Relief.**

Based on the foregoing, the Receiver requests that the Court order that:

(1)     The Receiver not respond to the Complaint or make any filings with WIPO relating to the Complaint; and

(2)     ICANN stay and abate the Complaint immediately.

The deadline when the "default" will presumably issue is December 16, 2011.   Thus, the

Receiver seeks emergency relief.

Respectfully submitted,

*/s/ Barry M. Golden*
Barry M. Golden
Texas State Bar No. 24002149
Peter L. Loh
Texas Bar Card No. 24036982
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201
(214) 999-4667 (facsimile)
(214) 999-3000 (telephone)
bgolden@gardere.com
ploh@gardere.com

**ATTORNEYS FOR THE RECEIVER,
PETER S. VOGEL**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record on November 21, 2011.

*/s/ Peter L. Loh*
Peter L. Loh

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for the Receiver attempted to confer via e-mail on November 21, 2011, with regard to the foregoing motion with counsel for Jeffrey Baron regarding the relief requested herein. Counsel for Mr. Baron did not state a position with regard to the relief requested. Therefore, the Receiver presents the motion for the Court's consideration.

*/s/ Peter L. Loh*
Peter L. Loh

# EXHIBIT A

<u>DECLARATION OF DAMON NELSON</u>

I, Damon Nelson, state and declare as follows:

1.     I have over 20 years of experience in computer programming, web design, and Internet business.

2.     I served 18 months as the registrar for the domain names at issue as part of the bankruptcy proceedings for Ondova Limited Company ("Ondova").  My duties at Ondova included responding to hundreds of Uniform Domain Name Dispute Resolution Policy ("UDRP") actions, cease and desist demands, and complaints of trademark infringement.

3.     I also manage my own domain name portfolio of over 400 domains containing websites for e-commerce, video, blogs, and "domain parking" and consults with clients concerning their online marketing campaigns.

4.     I hold Bachelor of Science and Masters in Business Administration degrees from Texas A&M University with specific course emphasis in engineering, computer programming, marketing, and investing.

5.     I am the Permanent Manager of Novo Point, LLC and Quantec, LLC, having been so appointed by the United States District Court for the Northern District of Texas (the "Court") in the matter styled *Netsphere, Inc., et al. v. Jeffrey Baron, et al.*, Civil Action No. 3:09-CV-0988-F (the "Lawsuit").

6.     Novo Point, LLC is the true registrant, *i.e.* owner, of the domain <funnygames.com> (the "Domain").

7.     I employed a technique I call "Income Valuation" to appraise the value of the Domain.

8.     The Income Valuation method uses a multiple of net annual earnings to determine a domain name's "Retail Sales Price." In other words, I arrived at a valuation of the Domain by multiplying one year of earnings by a multiple number.

9.     "Parked" domain names (*i.e.*, names which generate revenue through monetization like the Domain) are usually valued for retail sale at a multiple range of 4 to 10 times net annual earnings. However, Novo Point, LLC has many names (including the Domain) with valuable words/phrases in the name, multiple uses as a website, consistent evidence of visits to the sites, and earned revenue going back several years. Thus, I treated the Domain as being even more valuable than the typical "Parked" domain name and assigned a multiple of 20 or two times the highest multiple.

10.     I also used another method to value the Domain called the "Market Valuation" approach. Market Valuation employs computer generated and/or individually performed appraisals to determine marketable value.

11.     The first step I used in valuing the Domain through Market Valuation was to obtain an appraisal through a website named Estibot.com. Estibot.com is a widely used and accepted domain name appraisal website.

12.     Estibot.com provides free, fast appraisals for internet domain names. Estibot uses a vast amount of data including, but not limited, to previous sales data, keyword data, cost-per-click data, type-in data, and a statistically generated algorithm to arrive at the most accurate domain value derived solely from computer-driven automated analysis. Estibot.com's appraisals typically are within 20% (either above or below) of the eventual sale price based upon my experience participating in and/or observing numerous domain name sales involving an Estibot.com appraisal.

DECLARATION OF DAMON NELSON                                    PAGE 2

13.     I also performed a second appraisal of the Domain through DomainAppraisal.org. DomainAppraisal.org is another widely used and accepted domain name appraisal website service which provides professional appraisals from a minimum of 2 industry experts. DomainAppraisal.org's industry experts use information from auctions and private sales of similar domain names as factors as well as 25 key models to determine a domain's value.

14.     The Domain also received a third appraisal from Sedo.com.   Like DomainAppraisal.org, Sedo.com—in addition to using computer-generated calculations and information from sales and auctions—also employ individuals who will evaluate the domain name.  Appraisals from Sedo.com and DomainAppraisal.org can cost approximately $50.00 to $995.00 per domain depending on the detail level of valuation.

15.     I compared the Market Valuation appraisals (which included valuations from Estibot.com, DomainAppraisal.org, and Sedo.com) to the Income Valuation for the Domains to arrive at a starting value to price the Domain.  I then started negotiations for the sale of the Domain Name at the higher of the Income Valuation or the average of the 2 highest Market Valuations **plus** 20%.

16.     Paragraphs 6 through 15 above are referred to below as the "Protocol."

17.     The Protocol represents the best case scenario for the value of the Domain.  I created the Protocol to assume a domain name sales process involving a marketing campaign which may take 3-6 months.  Marketing efforts may include the following:

- advertisements on industry websites and in print publications;

- press releases to domain investor publications, wire services, and national news publications;

- engaging brokers;

- participating in a live auction for the Domain; and

DECLARATION OF DAMON NELSON                                            PAGE 3

- establishing and maintaining a sales website.

18.     Brokers and auction services also typically charge a 20% commission on any sale.

19.     I appraised the Domain using the Protocol.

20.     The chart below represents calculations I performed of the Income Valuation for the Domain:

| Domain Name | Net Annual Earnings for Jan 1, 2010 to Dec 31, 2010 | 20x Annual Earnings |
|---|---|---|
| funnygames.com | $19,928.30 | $398,566 |

21.     The chart below demonstrates the calculations I performed of the Market Valuations for the Domain:

| Domain Name | Estibot.com | DomainAppraisal.org | Sedo.com | Average of 2 highest appraisals plus 20% |
|---|---|---|---|---|
| funnygames.com | $72,000 | $292,500 | $15,000 | $218,700 |

22.     The chart below reflects my Final Valuation per the Protocol.

| Domain Name | Final Valuation (Higher of Income Valuation or average of 2 highest Market Valuations plus 20%) |
|---|---|
| funnygames.com | $398,566 |

23.     On or about November 16, 2011, I became aware that Tibaco Beheer B.V. ("Tibaco") submitted a Complaint to the World Intellectual Property Organization ("WIPO") for decision in accordance with the Uniform Domain Name Dispute Resolution Policy ("UDRP"), bearing the caption *Tibaco Beheer B.V. De Zaale 11 5612 AJ Eindhoven The Netherlands v.*

*Identity Protected by Whois Privacy Services Pty Ltd, Customer ID: 41323079999371*, and regarding the ownership and other rights relating to the Domain (the "Complaint"). A true and correct copy of the Complaint is attached hereto as Exhibit 1.

24.     The UDRP allows the alleged holder of trademark rights an expedited process to resolve disputes over supposedly offending domain names. The complainant initiates the arbitration through filing a complaint with an ICANN-approved tribunal such as WIPO, as Tibaco as done with regard to the Domain.

25.     The Complaint alleges that the Domain infringes certain alleged trademark rights in violation of the UDRP and seeks transfer of the Domain's registration from Novo Point, LLC to Tibaco. The Complaint recognizes the entry of the Receivership Order, the appointment Of Peter S. Vogel as Receiver, and Novo Point, LLC as the current registrant of the Domain.

26.     On information and belief, if no response is filed within twenty days of the Complaint's submission, *i.e.*, by December 16, 2011 (the "Default Date"), the Domain is subject to default and automatic transfer to the complainant Tibaco.

27.     The Complaint is just one of dozens of UDRP actions currently being threatened against domain names under the control of Novo Point, LLC and Quantec, LLC.

28.     Due to the stay of all claims against "Receivership Assets," such as domain names under the control of Novo Point, LLC and Quantec, LLC, put in place by the Court's *Order Appointing Receiver* in the Lawsuit, the Receiver has been able to prevent many of these UDRP actions from proceeding (the "UDRP Stay").

29.     Despite the UDRP Stay put in place by the Court's *Order Appointing Receiver* in the Lawsuit, some third parties have gone ahead and submitted UDRP actions against domain names under the control of Novo Point, LLC and Quantec, LLC to WIPO. When this has

occurred, the Receiver has consistently alerted WIPO of the UDRP Stay.  In all instances, however, WIPO disregarded the UDRP Stay and issued so-called "defaults " against domain names under the control of Novo Point, LLC and Quantec, LLC. Fortunately, the domain names subject to such "defaults" are valued at a fraction of the Final Valuation I have reached for the Domain.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 21, 2011.

Damon Nelson

# Exhibit 1

*Before the:*

## WORLD INTELLECTUAL PROPERTY ORGANIZATION
## ARBITRATION AND MEDIATION CENTER

| | |
|---|---|
| *TIBACO BEHEER B.V.*<br>*De Zaale 11*<br>*5612 AJ Eindhoven*<br>*the Netherlands*<br><br>(Complainant)<br><br>-v-<br><br>*Identity protected by Whois Privacy*<br>*Services PTY LTD., customer ID:*<br>*41323079999371.*<br><br>(Respondent) | **Disputed Domain Name:**<br><br>*www.funnygames.com* |

## COMPLAINT
(Rules, Paragraph 3(b);  Supplemental Rules, Paragraphs 4(a), 12(a), Annex E)

### I.  Introduction

1.    This Complaint is hereby submitted for decision in accordance with the Uniform Domain Name Dispute Resolution Policy (the **Policy**), approved by the Internet Corporation for Assigned Names and Numbers (**ICANN**) on October 24, 1999, the Rules for Uniform Domain Name Dispute Resolution Policy (the **Rules**), approved by ICANN on October 30, 2009, and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the **Supplemental Rules**).

### II.  The Parties

#### A.  The Complainant
(Rules, Paragraphs 3(b)(ii) and (iii))

2.    The Complainant in this administrative proceeding is Tibaco Beheer B.V., a private limited liability company incorporated under Dutch law.

2

3.    The Complainant's contact details are:

| | |
|---|---|
| Address: | P.O. Box 80, 5600 AB Eindhoven, the Netherlands |
| Telephone: | +31 (0)40 239 06 80 |
| Fax: | +31 (0)40 239 06 81 |
| E-mail: | teun@tibaco.nl |

4.    The Complainant's authorized representative in this administrative proceeding is:

| | |
|---|---|
| Name: | Anastasia I. Chistyakova |
| Firm: | CMS Derks Star Busmann N.V. |
| Address: | P.O. Box 85250, 3508 AG Utrecht, the Netherlands |
| Telephone: | +31 (0)30 21 21 528 |
| Fax: | +31 (0)30 21 21 157 |
| E-mail: | anastasia.chistyakova@cms-dsb.com |

5.    The Complainant's preferred method of communications directed to the Complainant in this administrative proceeding is:

Electronic-only material.

| | |
|---|---|
| Method: | e-mail |
| Address: | anastasia.chistyakova@cms-dsb.com |
| Contact: | Anastasia I. Chistyakova |

Material including hardcopy (where applicable)

| | |
|---|---|
| Method: | fax |
| Address: | P.O. Box 85250, 3508 AG Utrecht, the Netherlands |
| Fax: | +31 (0)30 21 21 157 |
| Contact: | Anastasia I. Chistyakova |

**B. The Respondent**
(Rules, Paragraph 3(b)(v))

6.    According to DomainTools (http://whois.domaintools.com), the identity of the Respondent in this administrative proceeding is protected by Whois Privacy Service

3

PTY LTD. A copy of the printout of the database search conducted on the 2nd of November 2011 is provided as **Annex 1.**

7.     The information disclosed in the WhoIs database search regarding how to contact the Respondent is as follows:

| | |
|---|---|
| Name: | *WhoIs Privacy Service PTY LTD.* |
| Address: | *P.O. Box 923, Fortitude Valley QLD 4006, Australia* |
| Telephone: | *+61 73 007 0090* |
| Fax: | *+61 73 007 0091* |
| E-mail: | *41323079999371-06d896@whoisprivacyservices.com.au* |

Furthermore, in the correspondence with WhoIs Privacy Service PTY LTD. the following customer ID of the Respondent should be included: 41323079999371.

8.     Complainant has previously attempted to contact the registrar Fabulous.com to obtain contact details of the Respondent. In response to its request the Complainant was contacted by a certain Joshua Cox, informing the Complainant that the domain name was subject to an Order Appointing Receiver entered by United States District Court Judge Royal Furgeson in the lawsuit styled Netsphere v. Ondova, case no. 3:09-cv-0988, pending at the US District Court for the Northern District of Texas. Upon this notice, Complainant contacted the receiver Peter S. Vogel to enquire about the domain name. Mr. Vogel alleged that Novo Point LLC is the true registrant of the domain name funnygames.com. However, this information has not been confirmed by the registrar Fabulous.com.

### III.  The Domain Name and Registrar
(Rules, Paragraphs 3(b)(vi), (vii))

9.     This dispute concerns the domain name identified below:

www.funnygames.com

10.    The registrar with which the domain name is registered is:

| | |
|---|---|
| Name: | *Fabulous.com PTY LTD.* |
| Address: | *P.O. Box 757, Fortitude Valley QLD 4006, Australia* |
| Telephone: | *+61 7 3007 0070* |
| Fax: | *+61 7 3007 0075* |
| E-mail: | *support@fabulous.com* |

### IV.  Language of Proceedings
(Rules, Paragraph 11)

11.  To the best of the Complainant's knowledge, the language of the Registration
Agreement is English. A copy of the Registration Agreement is provided as **Annex 2**
to this Complaint. The Complaint has been submitted in English.

### V.  Jurisdictional Basis for the Administrative Proceeding
(Rules, Paragraphs 3(a), 3(b)(xv))

12.  This dispute is properly within the scope of the Policy and the Administrative Panel
has jurisdiction to decide the dispute. The Registration Agreement, pursuant to which
the domain name that is the subject of this Complaint is registered, incorporates the
Policy in paragraph 4.1. A true and correct copy of the domain name dispute policy
that applies to the domain name in question is incorporated in the Registration
Agreement (which is provided as Annex 2 to this Complaint) and can be found at
http://www.fabulous.com/informationcenter/index.htm?formcode[objective]=&formc
ode[event]=&formcode[registrytime]=1320241798&formcode[certificate]=6f34f881e
73657a0e5e311a1390e4873&formdata[qid]=1516.

### VI.  Factual and Legal Grounds
(Policy, Paragraphs 4(a), (b), (c); Rules, Paragraph 3)

13.  This Complaint is based on the following grounds:

A.  The domain name(s) is(are) identical or confusingly similar to a trademark or
service mark in which the Complainant has rights;
(Policy, Paragraph 4(a)(i); Rules, Paragraphs 3(b)(viii), (b)(ix)(1))

Complainant is the owner of the following valid and subsisting trademarks
(hereinafter referred to as: "**the Trademarks**"):

5

- figurative Benelux trademark consisting of the single word 'funnygames', registered with the Benelux trademarks register on 8th of December 2005 under registration number 0782386 for goods in classes 9 (electronic periodicals and publications) and 16 (periodicals and other printed matters) and for services in class 41 (leisure; exploitation of an online gaming website; organisation of educational and sports events);

- figurative international trademark consisting of the single word 'funnygames', registered with the WIPO on the 17th of July 2007 under registration number 931660 for goods in classes 9 (electronic periodicals and publications) and 16 (periodicals and other printed matters) and for services in class 41 (entertainment; organizing of games, also by electronic means via Internet/website; organizing of educational and sports events). This international registration is based on BX 0782386 mentioned above.

A copy of the registration certificate of BX 0782386 is provided as **Annex 3** and a copy of the registration certificate of INT 931660 is provided as **Annex 4**.

Complainant has been actively using the mark FUNNYGAMES in the course of its business activities prior to the abovementioned national and international trademark registrations. Complainant procures, licenses and markets (online) gaming content under the mark FUNNYGAMES. Complainant commenced its business activities with registration of the domain name funnygames.nl on the 19th of December 2001 and has been using it intensively since 2002. A copy of the registration certificate with Stichting Internet Domeinregistratie Nederland (SIDN) is provided as **Annex 5**. Since then Complainant has registered in the region of 30 ccTLD domain names incorporating the mark FUNNYGAMES. The underlying websites offer in the region of 8.600 online games and have an average of 2,5 million unique (international) visitors a month.

The domain name is confusingly similar to the above mentioned Trademarks in which Complainant has rights. The Trademarks consist of the word 'funnygames', which is the most distinctive element of the Trademarks. In that respect it should be emphasized that Complainant's Trademarks are predominantly present in the online world. The Trademarks of Complainant are often used and perceived as ten subsequent characters (F, U, N, N, Y, G, A, M, E and S) as typed or displayed on a computer. When used in this manner, there is no difference between the Trademarks and the domain name in question. Hence the domain name is destined to be used in

6

such a manner that is identical to the Trademarks of Complainant. In view of this, the figurative element of the Trademarks is irrelevant. Furthermore, from an aural point of view, the Trademarks and the domain name in question are identical in pronunciation. Just this phonetical similarity can be enough to create a likelihood of confusion.

Whether or not the Trademarks are distinctive is irrelevant in this proceedings.

Prior decisions of UDRP panels have repeatedly held that the inclusion of the top level domain '.com' in the disputed domain name does not affect a finding of confusing similarity (see *Magnum Piering, Inc. v. The Mudjackers and Garwood S. Wilson, Sr.*, WIPO Case No. D2000-1525 holding that confusing similarity under the Policy is decided upon inclusion of a trademark in the domain name; and *Rollerblade, Inc. v. Chris McCrady*, WIPO Case No. D2000-0429).

**B.**     The Respondent has no rights or legitimate interests in respect of the domain name;
(Policy, Paragraph 4(a)(ii); Rules, Paragraph 3(b)(ix)(2))

Respondent has no rights to use the mark FUNNYGAMES. Respondent is not known by this mark, holds no registered trademarks for FUNNYGAMES and has not been licensed by Complainant to use this mark.

Furthermore, there is no legitimate reason why Respondent should choose to use the Complainant's Trademarks. The domain name resolves to a website containing one web page offering a number of search options, each option including a listing of links to third party commercial websites, which compete with the services offered by the Complainant. Screenshots of the contested website are provided as **Annex 6**. The website associated with this domain name appears to exist for the sole purpose of misleadingly diverting legitimate consumers of Complainant to Respondent's website, consequently diverting said consumers to third-party commercial websites via the links provided in the Respondent's website. Respondent is not making a legitimate non-commercial or fair use of the domain name, but clearly uses the domain name for commercial gain.

**C.**     The domain name was registered and is being used in bad faith.
(Policy, paragraphs 4(a)(iii), 4(b); Rules, paragraph 3(b)(ix)(3))

7

The domain name has been created on the 24th of December 2002, almost a year after the (at that moment already popular) domain name funnygames.nl has been registered. It is highly unlikely that Respondent was not aware of this registration, as Respondent is a company specialized in domain name registrations and holds a considerable portfolio of domain names. It may be assumed that Respondent conducted an availability or an Internet search prior to registration on the '.com' extension, and would have at least encountered the domain name funnygames.nl.

Respondent has solely used the domain name for the bad faith purpose of driving commercial business to its website which presents users with a number of sponsored listings, which subsequently redirect the user to competing third-party commercial websites. It is therefore highly likely that Respondent derives a financial gain from posting the sponsored listings, either from the number of Internet users that visit Respondent's website or by the number of Internet users that are redirected from Respondent's website to one of the third-party commercial websites. As such, Respondent takes unfair advantage of the distinctive character and repute of the Trademarks and Complainant's popular websites.

Moreover, as indicated above, the domain name in question is confusingly similar to the Trademarks, creating confusion by using a domain name that is phonetically equivalent to the Trademarks. The use of the domain name creates a likelihood of confusion with the Complainant's Trademarks as to the source, sponsorship, affiliation and endorsement of the Respondent's website (seeing as the website does not give away any information as to the origins of the website owner) and/or of the services offered on the Respondent's website, thus disrupting Complainant's business.

Lust by not least; if Respondent turns out to be Texas International Property Associates, it should be noted that UDRP panels have encountered bad faith practices of this domain name holder in several cases before (see section X, below).

### VII. Remedies Requested
(Rules, Paragraph 3(b)(x))

14.   In accordance with Paragraph 4(i) of the Policy, for the reasons described in Section VI, above, the Complainant requests the Administrative Panel appointed in

this administrative proceeding that the disputed domain name be transferred to the Complainant.

## VIII. Administrative Panel
(Rules, Paragraph 3(b)(iv); Supplemental Rules, Paragraph 8(a))

15. The Complainant elects to have the dispute decided by a single-member Administrative Panel.

## IX. Mutual Jurisdiction
(Rules, Paragraph 3(b)(xiii))

16. In accordance with Paragraph 3(b)(xiii) of the Rules, the Complainant will submit, with respect to any challenges that may be made by the Respondent to a decision by the Administrative Panel to transfer or cancel the domain name that is the subject of this Complaint, to the jurisdiction of the courts at the location of the principal office of the concerned registrar.

## X. Other Legal Proceedings
(Rules, Paragraph 3(b)(xi))

17. No legal proceedings have been commenced or terminated in connection with or relating to the domain name that is subject of this complaint. However, it has come to Complainant's attention that the domain name allegedly is subject to an Order Appointing Receiver entered by United States District Court Judge Royal Furgeson in the lawsuit styled Netsphere v. Ondova, case no. 3:09-cv-0988, pending at the US District Court for the Northern District of Texas. Under these circumstances Complainant maintains that this lawsuit is irrelevant to this administrative proceeding. The Order does not specify the grounds for asserting jurisdiction over any parties with respect to the transfer of the (unidentified) domain names, nor does it specify which domain names fall under the receivership.

18. Furthermore, as argued above, the domain name is question has been registered and is being used in bad faith, and it is unlikely that this issue will be addressed in the ongoing lawsuit. Last but not least, it is noteworthy that the same lawsuit has come up in several UDRP panel decisions (see *Judah Smith v. Whois Privacy Services Pty. Ltd. / URDMC LLC*, WIPO Case No. D2011-0397; *Amica Mutual Insurance Company v.*

9

*Texas International Property Associates, URDMC LLC*, WIPO Case No. D2010-2144
and *Eli Lilly & Co v. Texas International Property Associates*, WIPO Case No.
D2010-1985), in which the panels exercised their discretion to continue to a decision
on the merits, even if the domain names were implicated in pending litigation.

## XI. Communications
(Rules, Paragraphs 2(b), 3(b)(xii); Supplemental Rules, Paragraphs 3, 4, 12)

19.    A copy of this Complaint, together with the cover sheet as prescribed by the
Supplemental Rules, has been sent or transmitted to the Whois Privacy Service PTY
LTD. on the 16th of November 2011 by e-mail (*41323072999371-
06d896@whoisprivacyservices.com.au*), seeing as the identity of the domain name
holder could not be verified by the Complainant.

20.    A copy of this Complaint has been sent or transmitted to Fabulous.com on the 16th of
November 2011 by e-mail (support@fabulous.com).

21.    This Complaint is submitted to the Center in electronic form, including annexes, in the
appropriate format.

## XII. Payment
(Rules, Paragraph 19; Supplemental Rules Paragraph 10, Annex D)

22.    As required by the Rules and Supplemental Rules, payment in the amount of USD
1,500 has been made by credit card.

## XIII. Certification
(Rules, Paragraph 3(b)(xiv); Supplemental Rules, Paragraph 14)

23.    The Complainant agrees that its claims and remedies concerning the registration of
the domain name, the dispute, or the dispute's resolution shall be solely against the
domain name holder and waives all such claims and remedies against (a) the WIPO
Arbitration and Mediation Center and Panelists, except in the case of deliberate
wrongdoing, (b) the concerned registrar, (c) the registry administrator, (d) the Internet
Corporation for Assigned Names and Numbers, as well as their directors, officers,
employees, and agents.

10

24. The Complainant certifies that the information contained in this Complaint is to the best of the Complainant's knowledge complete and accurate; that this Complaint is not being presented for any improper purpose, such as to harass, and that the assertions in this Complaint are warranted under the Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

Respectfully submitted,

Anastasia I. Chistyakova

Date: 16 November 2011

11

## XIV:   List of Annexes

(Rules, Paragraph 3(b)(xv);  Supplemental Rules, Paragraphs 4(a), 12(a), Annex E).

1.   copy of the printout of database search for "funnygames.com" conducted on the 2nd of November 2011;

2.   Registration Agreement of Fabulous.com PTY LTD.;

3.   copy of the registration certificate of Benelux trademark registration 0782386;

4.   copy of the registration certificate of international trademark registration 931660;

5.   copy of the registration certificate with SIDN of the domain name "funnygames.nl";

6.   screenshots of the website funnygames.com;

*ANNEX 1*

This domain is protected by Whois Privacy Services Pty Ltd. For more
www.whoisprivacyservices.com.au

Domain funnygames.com:
  Whois Privacy Services Pty Ltd
  Domain Hostmaster, Customer ID : 41323079999371
  41323079999371-06d896@whoisprivacyservices.com.au

  PO Box 923
  Fortitude Valley QLD 4006 AU

Administrative contact:
Technical contact:
Billing contact:
  Whois Privacy Services Pty Ltd
  Domain Hostmaster, Customer ID : 41323079999371
  41323079999371-06d896@whoisprivacyservices.com.au

  PO Box 923
  Fortitude Valley QLD 4006 AU
  Phone: Phone: +61.730070090
  Fax: Phone: +61.730070091

Record dates:
  Record created on: 2002-12-24 19:02:06 UTC
  Record modified on: 2011-05-13 21:10:02 UTC
  Record expires on: 2011-12-24 UTC

Nameservers:
  ns2.hitfarm.com:
    208.87.33.160
  ns1.hitfarm.com:
    72.51.27.54

*ANNEX 2*

## Domain Name Registration Agreement

### Domain Name Registration Agreement

### 1. Introduction

1.1. This domain name registration agreement ("**Registration Agreement**") governs the terms and conditions upon which Fabulous.com Pty Ltd ACN 094 218 443 ("**Fabulous.com**") agrees to provide you ("**Registered Name Holder**") with the domain name registration service and associated services as described on the website located at www.Fabulous.com ("**Website**") and as otherwise described in this Registration Agreement ("**Services**").

1.2. Whois Privacy Services Pty Ltd ACN 133 058 741 provides a domain name privacy registration service ("**Whois Privacy Service**") for domain names registered with Fabulous.com. If you elect to subscribe to the Whois Privacy Service, you acknowledge that you have you have read, understood and agree to be bound by the terms and conditions of the Whois Privacy Services Agreement.

1.3. By using the Services, you acknowledge that you have read, understood, and agree to be bound by the terms and conditions of this Registration Agreement, as well as our Privacy Policy and Anti-Spam Policy.

1.4. You acknowledge and agree that if you are in breach of this Registration Agreement, Fabulous.com may suspend, cancel or modify your use of the Services by providing you with notice to your primary email address listed on your Fabulous.com account.

1.5. Fabulous.com reserves the right to amend the terms and conditions set out in this Registration Agreement or the operation of the Services by notice to your Fabulous.com account. Where we vary the charges applying to the Services, we will give you 14 days' prior notice of the change. If you do not agree to the amendment of the terms or conditions of the Registration Agreement or the operation of the Services or the variation in the charges, you may terminate the Registration Agreement by emailing support@fabulous.com and we will assist you to transfer your domain name to the ICANN accredited domain name registrar of your choice.

1.6 For the purposes of this Registration Agreement, "**Australian Consumer Law**" means the *Competition and Consumer Act 2010 (Cth)*.

### 2. Domain Name Registration, Administration, and Renewal Services

2.1. Fabulous.com is an accredited Registrar of the Internet Corporation For Assigned Names and Numbers ("**ICANN**") for the .com, .net, .org and .info top level domains ("**gTLDs**").

2.2. All gTLDs that Fabulous.com registers or renews for you ("**Registered Names**") shall not be effective unless and until the administrator for the particular gTLD ("**Registry**") updates the central domain name registry database in accordance with the information you have provided to Fabulous.com, pursuant to the terms of the relevant Registry-Registrar Agreement entered into between that Registry and Fabulous.com.

### 3. Registration, Renewal, Recovery and Transfer of Domain Names

3.1. Fabulous.com registers domain names on a first come, first served basis and does not guarantee that any domain name applied for by you will be able to be registered.

3.2. You agree that you will not take any action in relation to a particular domain name until the successful registration of that domain name ("**Registered Name**") has been confirmed by

Fabulous.com.

3.3. You shall not have any proprietary rights in a Registered Name. Registration and/or renewal of a Registered Name only gives you a personal licence ("**Domain Name Licence**") to use the Registered Name for the period during which the registration of the domain name remains current ("**Registration Period**").

3.4. The continued registration and use of a Registered Name is subject to the payment of the applicable renewal fees prior to the expiry of the Registration Period and subject to your continued compliance with the terms of this Registration Agreement and any rules or policies published on the Website. In the event that the applicable renewal fees for a Registered Name have not been received by Fabulous.com (as cleared funds) on or before the expiry date, Fabulous.com reserves the right to immediately cancel the registration of the Registered Name and remove it from the Registry's root zone file, at which time, the Registered Name will cease to resolve to the nominated nameservers.

3.5. If you agree to have the Registration Period for the Registered Name automatically renewed by selecting the 'Auto-Renewal' feature (accessible via the online interface to your Fabulous.com account), then:

3.5.1 Fabulous.com will automatically renew the Registration Period for the Registered Name for a period of one (1) year from the expiry date of the current Registration Period for the Registered Name, subject to your continued compliance with the terms of this Registration Agreement and any rules or policies published on the Website. If the Auto-Renewal feature has been enabled, you hereby authorize and instruct Fabulous.com to charge and deduct the applicable registration renewals fees from your Fabulous.com account in accordance with clause 3.5.2.

3.5.2. Registration renewal fees are charged to you and deducted from your Fabulous.com account on the twentieth (20th) day of the month preceding the month in which the current Registration Period for the Registered Name expires. In the event that you do not have sufficient cleared funds in your account for the applicable registration renewal fees to be deducted, Fabulous.com reserves the right to cancel the registration of the Registered Name and remove it from the Registry's root zone file upon the expiry of the current Registration Period without further notice to you.

3.6. You acknowledge that it is your responsibility to ensure that the Domain Name Licence is renewed and release and hold Fabulous.com harmless against any claim for damage or loss arising from your failure to renew registration of a Registered Name.

3.7. It is your responsibility to ensure payment details remain current and that you maintain sufficient funds in your account for the applicable registration renewal fees where the Auto-Renewal feature has been enabled.

3.8. In the event that a Registered Name is not renewed by you prior to the expiry of the current Registration Period, the Registered Name is immediately removed from the Registry's root zone file and is then held by Fabulous.com for a period of thirty-three (33) days ("**Registrar Hold Period**"). You may renew the Registered Name at any time during the Registrar Hold Period, by paying the applicable registration fees and any past due renewal fees for the Registered Name to Fabulous.com. Upon payment of these fees, the Registrar Hold will be removed from the Registered Name and the relevant domain name data reinstated to the Registry's root zone file.

3.9. Five (5) days after the end of the Registrar Hold Period ("**Five Day Period**"), Fabulous.com shall request the Registry to delete the Registered Name from its central database of registered domain names. You may renew the Registered Name during this Five Day Period (ie. before Fabulous.com has requested the Registry to delete the Registered Name) by paying the applicable registration fees and any past due renewal fees together with a fee of US$29.95 ("**Extension Fee**").

Fabulous.com charges the Extension Fee because it must manually renew the Registered Name.

3.10. After the Registry processes the request to delete the Registered Name, it will then be subject to an additional thirty (30) day **"Redemption Grace Period"** during which the Registered Name can still be recovered by Fabulous.com and re-registered to you.

3.11. Fabulous.com is charged a fee by the Registry and incurs additional administrative costs to recover a Registered Name during the Redemption Grace Period. Accordingly, Fabulous.com will charge you a US$100 fee to recover a Registered Name during the Redemption Grace Period (**"Redemption Fee"**) in addition to charging you the applicable registration fee and any past due renewal fees for the Registered Name. Fabulous.com will only recover a Registered Name during the Redemption Grace Period upon receiving a written notice (either by email or facsimile) from you, requesting Fabulous.com to recover the Registered Name and agreeing to pay the Redemption Fee.

3.12. After the expiry of the Redemption Grace Period, there is a 5 day window where the Registered Name goes in **"pending delete"** status, during which the Registered Name cannot be recovered by Fabulous.com. After the 5 day pending delete window, the Registered Name is made available for registration by the general public on a first come, first served basis.

3.13. The Domain Name Licence for a Registered Name may be transferred from you to a third party transferee (**"Transferee"**) while Fabulous.com remains as the sponsoring registrar of the Registered Name by having the Transferee set up an account with Fabulous.com, agreeing to be bound by the terms of this Registration Agreement as the new registrant and then transferring or "pushing" the Registered Name into the Transferee's account. Transfers of a Registered Name in conjunction with a change of sponsoring registrar must be undertaken in accordance with clause 13 below.

3.14. New customers through a Backorder service:
If you have purchased a domain name through a Backorder service and that domain name was registered with, and not yet deleted by, Fabulous.com at the time of your purchase, you acknowledge and agree that your backorder purchase may be subject to cancellation for a period of up to thirty-five (35) days after the Registrar Hold Period for that domain name. If your backorder purchase is cancelled you will be entitled to a refund. A domain name purchased via the backorder service selected by Fabulous.com will be treated as a new registration and therefore a request to transfer the domain name to another registrar cannot be made within 60 days of the purchase of the domain name.

**4. Domain Name Dispute Resolution Policy**

4.1. You acknowledge that you have read, understood and agree to be bound by all terms and conditions of ICANN's Uniform Domain Name Dispute Resolution Policy ('UDRP'), as amended from time to time, which is hereby incorporated into this Registration Agreement by reference.

4.2. For the adjudication of disputes concerning or arising from use of the Registered Name, you shall submit, without prejudice to other potentially applicable jurisdictions, to the jurisdiction of the courts of both your domicile and where Fabulous.com is located.

**5. Warranties and Obligations**

5.1. You shall at all times comply with:

(a) ICANN standards, policies, procedures and practices; and

(b) operational standards, policies, procedures and practices adopted for each Registry TLD.

5.2. You shall provide to Fabulous.com, accurate and reliable contact details and promptly correct and update them during the term of registration of the Registered Name, including:

(a) your full name, postal address, e-mail address, voice telephone number, and fax number (if available); the name of the authorized person for contact purposes if you are an organization, association, or corporation;

(b) the names of the primary nameserver and secondary nameserver(s) for the Registered Name;

(c) the name, postal address, e-mail address, voice telephone number, and (where available) fax number of the technical contact for the Registered Name; and

(d) the name, postal address, e-mail address, voice telephone number, and (where available) fax number of the administrative contact for the Registered Name.

5.3. Your wilful provision of inaccurate or unreliable information, your wilful failure to promptly update information provided to Fabulous.com, or your failure to respond for over fifteen calendar days to inquiries by Fabulous.com concerning the accuracy of contact details associated with your registration shall constitute a material breach of this Registration Agreement and be a basis for cancellation of the registration of your Registered Name.

5.4. If you license the use of a domain name to a third party ("Licensee"):

(a) you are nonetheless the Registered Name Holder of record and responsible for providing your own full contact information and for providing and updating accurate technical and administrative contact information adequate to facilitate the timely resolution of any problems that arise in connection with the Registered Name; and

(b) you accept liability for harm caused by the wrongful use of the Registered Name unless you promptly disclose the current contact information provided by the Licensee and the identity of the Licensee to a party providing you reasonable evidence of actionable harm.

## 6. Payment of Moneys

6.1. The applicable fees for the registration or renewal of a Registered Name must be paid in full and any identification or authorization documents requested shall be provided to Fabulous.com at the time of submitting the domain name registration or renewal application, as the case may be. Fabulous.com reserves the right to not process a domain name registration or renewal until all applicable fees have been paid, the funds cleared and any requested identification or authorization documents have been received by Fabulous.com. All fees are non-refundable.

6.2. All payments of fees for the Services provided by Fabulous.com shall be made in U.S. dollars.

6.3. In the event that you fail to pay any and all moneys owed to Fabulous.com as and when they are due and payable ("Debt"), or if any requested identification or authorization documents are not provided, then Fabulous.com shall be entitled in its sole discretion, to take any or all of the following actions:

(a) immediately suspend access to your Fabulous.com account;

(b) assume full control of all of the Registered Names in your Fabulous.com account;

(c) transfer some or all of the Registered Names in your Fabulous.com account to Fabulous.com or its nominee, in partial or total satisfaction of the Debt. You hereby irrevocably appoint Fabulous.com as your attorney for the purposes of entering into any transaction and executing any document required to give effect to this clause 6.3.

6.4. You acknowledge and agree that upon Fabulous.com exercising its rights under clause 6.3, Fabulous.com shall have all rights as the official registrant of the relevant domain name, including the right to sell the domain name to a third party. Fabulous.com may in its sole and absolute discretion, re-transfer the relevant domain name to you, subject to the payment of any outstanding registration or renewal fees, as well as the payment to Fabulous.com of an administration fee.

6.5. If you are an Australian resident for taxation purposes, then in addition to the fees referred to in this clause 6, Fabulous.com is entitled to charge and collect from you an amount equal to 10% of those fees on account of the Goods and Services Tax ("GST") payable by Fabulous.com under the *A New Tax System (Goods and Services Tax) Act 1999 (Cth)*.

**7. Collection of Personal Information**

7.1. You must provide to Fabulous.com, the information set out in all of the fields of the applicable registration form or renewal form (**'Personal Information'**). You warrant that all Personal Information provided is complete, accurate, reliable and not otherwise misleading. You undertake to ensure that the Personal Information remains correct and current at all times during the Registration Period and to notify us immediately if there has been a change in the Personal Information. Failure to comply with this clause shall constitute a material breach of this Registration Agreement.

7.2. You may access the Personal Information provided to Fabulous.com for the purposes of amending any information that is incorrect or incomplete by using a unique registry key (**"Registry Key"**) that is provided to you by Fabulous.com after registration of your Registered Name.

7.3. You may provide a written authorisation to an agent to hold and use the Registry Key. If you do, Fabulous.com must immediately be notified of such authorisation.

7.4. Personal Information we collect from you will be dealt with in accordance with the Fabulous.com Privacy Policy.

7.5. You consent to your Personal Information being:

(a) transmitted to, and used, copied, distributed, published, modified and otherwise processed by, the Registry or its designees and agents, including in relation to the relevant central domain name registry database; and

(b) used by Fabulous.com for inclusion in registers and databases maintained by Fabulous.com or its licensees, including the WHOIS database.

7.6. You consent to your Personal Information being processed, stored and used in accordance with this clause 7 and the Fabulous.com Privacy Policy.

7.7. You undertake to provide a copy of this clause 7 and the Fabulous.com Privacy Policy to any third-party individuals whose Personal Information is to be supplied to Fabulous.com by you and obtain the consent of such third party individuals before disclosing their Personal Information to Fabulous.com.

7.8. Fabulous.com will not process the Personal Information collected from you in a way that is incompatible with the purposes and other limitations as set out in this clause 7 or the Fabulous.com

Privacy Policy.

7.9. Fabulous.com undertakes to use all reasonable precautions to protect Personal Information from loss, misuse, unauthorized access or disclosure, alteration, or destruction.

**8. Agents and Licensees**

8.1. If the Services are used or accessed by your agent, you shall nonetheless be bound as a principal by all terms and conditions of this Registration Agreement, including the UDRP.

8.2. You acknowledge that you remain the responsible contracting party under this Registration Agreement even if you licence a third party to use the Registered Name.

**9. No Warranty or Guarantee**

9.1. The Registry or ICANN may provide that registration of certain domain names is prohibited ("Prohibited Domain"). Fabulous.com does not guarantee that any particular domain name you wish to register or renew is not a Prohibited Domain.

9.2. Fabulous.com does not guarantee that you will be able to register or renew a particular domain name, even if a preliminary search or inquiry indicates that the domain name is available. This may be due to:

(a) the simultaneous attempted registration of the domain name by another domain name registrar; or

(b) inaccuracies or errors in the domain name registration or renewal process or related databases, including the various WHOIS databases.

9.3. Fabulous.com may in its sole and absolute discretion, accept or reject your application for the registration or renewal of a particular domain name.

9.4. Fabulous.com is not responsible or liable in any way for any errors, omissions or any other actions or inactions by the Registry arising out of or in connection with your application for registration or renewal of a particular domain name, or a failure to register or renew a particular domain name.

9.5. To the maximum extent permitted by law (including the Australian Consumer Law), Fabulous.com disclaims all warranties and guarantees, whether express or implied, regarding the Services or any other services that Fabulous.com may perform for you from time to time.. To the extent that such warranties or guarantees cannot be disclaimed by law, you agree that the liability of Fabulous.com shall be limited to the re-supply of the services (except to the extent that such limitation is in breach of the Australian Consumer Law).

9.6. You acknowledge and agree that the registration or renewal of a particular domain name through the Services or the subsequent use of the Registered Name does not confer upon you any proprietary rights in the Registered Name, nor does it guarantee immunity from and against any challenge to the registration of the Registered Name by any third party, nor from the cancellation, suspension or transfer of the Registered Name.

**10. Third Party Rights**

10.1. You warrant that the registration or renewal of the Registered Name is made in good faith and that, to the best of your knowledge and belief, neither the registration nor renewal of the Registered Name nor the manner in which it is or shall be used, either directly or indirectly, infringes the

intellectual property rights or other legal rights of any third party. A breach of this warranty shall constitute a material breach of this Registration Agreement.

## 11. Limitation of Liability

11.1. To the maximum extent permitted by law (including the Australian Consumer Law, neither Fabulous.com nor the Registry shall have any responsibility and shall not be liable to you or your agent or nominee for any and all indirect, incidental, punitive, special, exemplary, or consequential loss or damage or any damages resulting from loss of profits, arising out of or in connection with the Services or this Registration Agreement.

11.2 To the maximum extent permitted by law (including the Australian Consumer Law), you agree that in no event will the liability of Fabulous.com under this Registration Agreement for any matter exceed the fees paid by you to Fabulous.com for the provision of the Services.

## 12. Indemnity

12.1. To the maximum extent permitted by law (including the Australian Consumer Law), you agree to indemnify, keep indemnified, defend and forever hold harmless, Fabulous.com, the Registry and the Registry's sub-contractors, and the directors, officers, employees, agents and affiliates of each of them, from and against any and all claims, damages, liabilities, costs and expenses (including reasonable legal fees and expenses) arising out of or in connection with:

(a) your application to register or renew a particular domain name, or a failure to register or renew that domain name; or

(b) your registration or use of any Registered Name, whether registered in your name or the name of your agent or nominee; or

(c) your violation of any third party right, including without limitation any intellectual property or other proprietary rights;

(d) any UDRP proceeding, other administrative proceeding or court proceeding with respect to the Registered Domain Name, whether initiated by you or by a third party.

12.2. The indemnity set out in this clause 12 shall survive the termination or expiration of this Registration Agreement.

## 13. Change in Registrar

13.1. You acknowledge and agree that you can change registrars for an existing domain name, but only in accordance with the ICANN approved Policy on Transfer of Registrations between Registrars. Policy on Transfer of Registrations between Registrars.

13.2. If you choose to change registrars for an existing domain name, this Registration Agreement will be terminated. Termination of this Registration Agreement does not affect any accrued rights or remedies of either party existing as at the date of termination.

## 14. Use of the Registered Names

14.1. You warrant and covenant that:

(a) The Registered Names shall not be used in such way as to mislead or deceive minors into viewing sexually explicit material, whether in breach of the provisions of H.R.939 Truth in Domain

Names Act (United States) or otherwise ("**Misleading Activity**");

(b) The Registered Names shall not be used to redirect internet traffic to any website that contains content (or links to such content) that:

(i) Is hateful, defamatory, derogatory or bigoted based on racial, ethnic, political grounds or otherwise causes injury, damage or harm of any kind to any person or entity;

(ii) That is threatening or invades another person's privacy or property rights or otherwise in breach of a duty owed to a third party;

(iii) Depicts minors engaged in any activity of a sexual nature or may otherwise harm minors;

(iv) Infringes the registered trademark, copyright, patent rights, trade secret or other intellectual property rights of a third party;

(v) Violates any applicable local, state, national or international law or regulation;

(vi) Promotes, is involved in or assists in, the conduct of illegal activity of any kind or promotes business opportunities or investments which are not permitted under law;

(vii) Advertises or offers for sale any goods or services that are unlawful or in breach of any national or international law or regulation;

(viii) Advertise or offer for sale any goods or services the advertiser does not have the legal right to sell; or

(ix) Attempts to defraud members of the public in any way (for example, "phishing" sites).

(collectively referred to as "**Illegal Activities**").

14.2. Fabulous.com does not condone the use of a Registered Name for or in connection with any Misleading Activity or any Illegal Activity and reserves the right to report such activities to the relevant legal enforcement agencies if it determines in its sole and absolute discretion that a Registered Name is being used in such manner.

## 15. Material Breach

15.1. You are in material breach of this Registration Agreement ("**Material Breach**") entitling Fabulous.com to exercise its rights under clause 16 if, after having received notice from Fabulous.com of the particulars of the breach ("**Breach Notice**"), you:

(a) fail to rectify the breach within five (5) business days of receipt of the Breach Notice; or

(b) fail to provide Fabulous.com with a reasonable explanation in defence of the breach within five (5) business days of receipt of the Breach Notice.

## 16. Suspension, Cancellation, Transfer or Modification of Domain Name Registration

16.1. Fabulous.com may immediately suspend, cancel, transfer or modify your registration of Registered Names by providing you with notice to your primary email address listed on your Fabulous.com account if:

(a) you are in Material Breach of this Registration Agreement;

(b) Fabulous.com has reasonable grounds to believe that a Registered Name is being used for or in connection with a Misleading Activity or an Illegal Activity; or

(c) Fabulous.com has reasonable grounds to believe that a Registered Name(s) is being used contrary to Fabulous.com's Anti-Spam Policy.

16.2. Your Registered Names are subject to suspension, cancellation, transfer or modification by Fabulous.com, pursuant to the terms of any applicable rules, policies or procedures adopted by:

(a) ICANN, or

(b) Any domain name registrar (including Fabulous.com) or any central domain name registry operator (including the Registry) to the extent that they are not inconsistent with those of or adopted by ICANN,
for the purpose(s) of:
(i) correcting mistakes by Fabulous.com or any central domain name registry operator (including the Registry) in registering, renewing and/or transferring the Registered Names; or
(ii) resolving disputes concerning the Registered Names.

16.3. The relevant Registry has the right to deny, cancel or transfer any registration or transaction, or place any domain name on registry lock, hold or similar status that it deems necessary in its discretion:

(a) to protect the integrity and stability of the Registry;

(b) to comply with any applicable laws, government rules or requirements, requests of law enforcement, or any dispute resolution process;

(c) to avoid any liability, civil or criminal, on the part of the Registry, as well as its affiliates, subsidiaries, officers, directors and employees; or

(d) to correct mistakes by Fabulous.com or the Registry in registering, renewing and/or transferring the Registered Names.

The Registry also reserves the right to place upon registry lock, hold or similar status a Registered Name during resolution of a dispute.

16.4. You acknowledge and agree that the .ORG Registry, Public Interest Registry ("PIR"), has in place a Domain Anti-Abuse Policy and that an abusive use of a domain name may give rise to PIR exercising its right pursuant to clause 16.3. Please read the Policy for an understanding of what PIR regards as an abusive use of a domain name.

17. Parking of Domains

17.1. Upon registration of one or more domain names pursuant to this Registration Agreement, you may elect to have Fabulous.com host the Registered Name(s) and/or any other domain names of which you are the official registrant ("Parked Domains") on a domain name server owned or controlled by Fabulous.com or a related body corporate or related entity of Fabulous.com at no charge to you.

17.2. At your or your agent's request, Fabulous.com may redirect all browser traffic directed at the Parked Domains to a URL of the website of the "Roar" Internet Directory service, owned and

controlled by Roar.com Pty Ltd ("Roar") or to a website of another entity with whom Fabulous.com or a related body corporate of Fabulous.com has entered into an agreement ("Affiliate"). Roar and the Affiliates display pay-per-click advertisements of commercial websites operated by third parties, including material or links to material that contains content of an adult nature that is not suitable for viewing by minors or which may otherwise be deemed obscene or offensive ("Adult Material").

17.3. To the maximum extent permitted by law (including the Australian Consumer Law), Fabulous.com, Roar.com Pty Ltd and the Affiliates shall have no responsibility and shall not be liable to you or your agent for any criminal or civil sanctions imposed on you or your agent as a direct or indirect result of browser traffic directed at the Parked Domains being redirected to Adult Material, whether or not such redirection is caused by the categorisation of the Parked Domain by Fabulous.com, Roar.com Pty Ltd or the Affiliates.

**18. Survival**

18.1. Clauses 7, 9, 10, 11, 12, 14 and 18 shall survive the termination or expiration of this Registration Agreement.

**19. Severability**

19.1. The terms of this Registration Agreement are severable. If any term or provision is declared invalid or unenforceable, it shall be severed from this Registration Agreement and shall not affect the interpretation or operation of the remaining terms or provisions, which shall remain in full force and effect.

**20. Entire Agreement**

20.1. To the maximum extent permitted by law (including the Australian Consumer Law), this Registration Agreement and the UDRP incorporated herein, constitutes the entire agreement between you and Fabulous.com regarding the provision of the Services and supersede all prior agreements and understandings, whether established by custom, practice, policy, or precedent.

**21. Governing Law**

21.1. This Registration Agreement is governed in all respects by and construed in accordance with the laws of the State of Queensland, Australia, and you submit to the non-exclusive jurisdiction (without prejudice to other potentially applicable jurisdictions) of the Courts of Queensland.

**22. Relationship**

22.1. Nothing in this Registration Agreement shall be construed as creating the relationship of agency, partnership or joint venture between the parties.

**23. Force Majeure**

23.1. Neither party will be in default or otherwise liable for any delay or failure in its performance under this Registration Agreement where such delay or failure arises by reason of an Act of God, any government or governmental body, acts of war, the elements, strikes or labor disputes, power or system failures, failure of the Internet, computer hacking, or other causes beyond the reasonable control of such party.

**24. Waiver**

24.1. Failure by either party to exercise or enforce any right or provision of this Registration

Agreement shall not be deemed to be a waiver of such right or provision and does not affect the right
to require any provision to be performed at any time thereafter.

25. Notices

25.1. All notices required to be sent under this Registration Agreement shall be sent via e-mail:

(a) If to Fabulous.com, to support@fabulous.com

(b) If to you, to the primary email address listed on your Fabulous.com account.

25.2. Any notice sent shall be deemed to have been received at the time and date logged by the
sender's email server of confirmation of delivery of the email message to the recipient's email server.

*ANNEX 3*



*01 Inschrijvingsnummer*
0782386

*Nummer en dagtekening (dag en uur) van het depot*
1087851      19-10-2005 , 10.00

*02 Vervaldatum*
19-10-2015

*03 Naam van de houder*
Tibaco Beheer B.V.

*04 Adres (straat en nummer) van de houder*
De Zaale 11

*05 Postcode, plaats en land van de houder*
5612 AJ Eindhoven,
Nederland

*06 Naam en adres van de gemachtigde of vermelding van het correspondentie-adres van de houder*
Algemeen Octrooi- en Merkenbureau B.V.
John F. Kennedylaan 2
5612 AB Eindhoven
Nederland

*09 Afbeelding van het beeldmerk*



*12 In voorkomend geval, vermelding van: classificatie van de beeldelementen; vormmerk; kleur met of zonder beschrijving; onderscheidende elementen*
CFE 4.5.3-15

*13 Klasse-aanduiding en opgave van de waren en diensten*
Kl 9 Elektronische tijdschriften en publicaties.
Kl 16 Tijdschriften en overige drukwerken.
Kl 41 Ontspanning; het exploiteren van een on-line spelletjessite; het organiseren van educatieve en sportieve evenementen.

*14 Klasse-opsomming en opgave van de waren en diensten*
09 16 41

*Datum inschrijving*
08-12-2005

*Datum publicatie depot*
01-12-2005

*Publicatiedatum van de inschrijving*
01-01-2006

*Status*
**Merk ingeschreven**

BENELUX OFFICE FOR INTELLECTUAL PROPERTY

Translation

01 Registration number
     0782386
Number and date (day and hour) of application
     1097851     19-10-2005, 10.00
02 Expiry date
     19-10-2015
03 Name of applicant
     Tibaco Beheer B.V.
04 Address (street and number) of applicant
     De Zaale 11
05 Zipcode, place and country of applicant
     5612 AJ Eindhoven
     The Netherlands
06 Name and address of attorney or mentioning of address of correspondence of applicant
     Algemeen Octrooi- en Merkenbureau B.V.
     John F. Kennedylaan 2
     5612 AB Eindhoven
     The Netherlands
09 Device mark



12 As it occurs, indication of: classification of figurative elements, shape mark, colour with or without description, distinctive elements
     CFE 4.5.5-15
13 Classes and goods and services
Cl 9     Electronic magazines and publications.
Cl 16   Magazines and other printed matter.
Cl 41   Entertainment; the exploitation of an online game website; the organisation of educational and sporting events.
14 Classes
     09 16 41
Date registration
     08-12-2005
Publication date of the application
     01-12-2005
Publication date of the registration
     01-01-2006
Status
     Trademark registered

*ANNEX 4*



# MADRID
### The International Trademark System

Printed : 02/11/2011

## 931660 – FunnyGames

Countries    CH EM NO US

**151  Date of the registration**
17.07.2007

**180  Expected expiration date of the registration/renewal**
17.07.2017

**270  Language of the application**
English

Current Status

**732  Name and address of the holder of the registration**
Tibaco Beheer B.V.
De Zaale 11
NL-5612 AJ Eindhoven  (NL)

**811  Contracting State of which the holder is a national**
BX

**842  Legal nature of the holder (legal entity) and State, and, where applicable, territory within that State where organized**
Limited Liability Company under Dutch law

**740  Name and address of the representative**
Algemeen Octrooi- en Merkenbureau
John F. Kennedylaan 2
NL-5612 AB Eindhoven  (NL)

**770  Name and address of the previous holder**
Tibaco B.V.
De Zaale 11
Eindhoven  (NL)

**540  Mark**



**531  International Classification of the Figurative Elements of Marks (Vienna Classification) - VCL(6)**
04.05.05 ; 04.05.15

511  International Classification of Goods and Services for the Purposes of the Registration of Marks (Nice Cla
09
Electronic periodicals and publications.
16
Periodicals and other printed matters.
41
Entertainment; organizing of games, also by electronic means via Internet / website; organizing of
and sports events.

821  Basic application
BX, 19.10.2005, 1087851

822  Basic registration
BX, 08.12.2005, 782386

832  Designation(s) under the Madrid Protocol
EM - NO - US

834  Designation(s) under the Madrid Protocol by virtue of Article 9sexies
CH

527  Indications regarding use requirements
US

Registration : 2007/33 Gaz, 20.09.2007, CH, EM, NO

Grant of protection subject to opposition : 2007/40 Gaz, 08.11.2007, EM

Grant of protection subject to opposition : 2008/14 Gaz, 08.05.2008, NO

Grant of protection : 2008/28 Gaz, 31.07.2008, NO

Grant of protection : 2008/27 Gaz, 07.08.2008, EM

Subsequent designation : 2008/3 Gaz, 05.02.2008, US

Total provisional refusal of protection : 2008/11 Gaz, 02.04.2008, US

Other final decision - Awaiting translation before publication : US

*ANNEX 5*



Whois

## Use the Whois

☑ **Acceptance:**
For more detailed information about the domain name, tick this box. By ticking the box, you confirm that you have read and accept the 'Whois Terms and Conditions of Use' and that you will use the information provided only for a purpose or purposes permitted under those terms and conditions. The 'Whois Terms and Conditions of Use' can be downloaded from this webpage.

funnygames                                                          

More about the Whois

| | |
|---|---|
| Domain name | funnygames.nl |
| Status | active |
| Registrant | Tibaco Beheer B.V. |
| Administrative contact | erik@tibaco.nl |
| Registrar | Registrar.eu<br>Willem Buytewechstraat 40<br>3024BN ROTTERDAM<br>Netherlands |
| Technical contacts | erik@tibaco.nl |
| Domain nameservers | ns10.dnsmadeeasy.com<br>ns11.dnsmadeeasy.com<br>ns12.dnsmadeeasy.com<br>ns13.dnsmadeeasy.com |
| Date registered | 2001-12-19 |
| Record maintained | NL Domain Registry |

Copyright notice
No part of this publication may be reproduced, published, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, recording, or otherwise, without prior permission of the Foundation for Internet Domain Registration in the Netherlands (SIDN).
These restrictions apply equally to registrars, except in that reproductions and publications are permitted insofar as they are reasonable, necessary and solely in the context of the registration activities referred to in the General Terms and Conditions for .nl Registrars.

Any use of this material for advertising, targeting commercial offers or similar activities is explicitly forbidden and liable to result in legal action. Anyone who is aware or suspects that such activities are taking place is asked to inform the Foundation for Internet Domain Registration in the Netherlands.
©The Foundation for Internet Domain Registration in the Netherlands (SIDN)
Dutch Copyright Act, protection of authors' rights (Section 10, subsection 1

clause 1);

Using the Whois, you can check the status of a domain name (Is lookup), or get more detailed information about a registered domain name (Whois look up).

## Is lookup instructions

Enter the domain name whose status you want to check, and click 'OK'. The Whois will then tell you the status of the name, according to the most recent records. The various statuses are explained here.

## Whois lookup instructions

Before using the Whois, you need to agree to the Whois Terms and Conditions of Use. To do so, simply tick the 'I agree' box. Next, enter the .nl domain name that you want more information about, and click 'OK'. The Whois will then give you the registration details for the name.

## Explanation of Is output

The status of a name can be any of the following:

* **free**: the .nl domain name is still available for registration
* **withdrawn**: the .nl domain name is barred from registration
* **excluded**: the .nl domain name is excluded from registration
* **requested**: an application for the .nl domain name is being processed;
* **active**: the .nl domain name has already been registered. (If you want to know who has registered the name, tick the 'Extended search' box. You will then be shown more information about whoever has registered the name.)
* **Inactive**: the .nl domain name has already been registered, but has not yet been added to the .nl zone file. (If you want to know who has registered the name, tick the 'Extended search' box. You will then be shown more information about whoever has registered the name.)
* **In quarantine**: this .nl domain name's registration has been cancelled. Following cancellation, a domain name is placed in quarantine for forty days.



*ANNEX 6*





