IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NETSPHERE, INC., MANILA INDUSTRIES, INC., AND MUNISH KRISHAN, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:09-CV-0988-F |
| JEFFREY BARON AND ONDOVA LIMITED COMPANY, | § § § § | |
| Defendants. | § § § | |

**NON-PARTY ICANN'S RESPONSE TO THE RECEIVER'S SECOND MOTION AND SUPPLEMENT TO SECOND MOTION TO ENFORCE STAY**

**I.  EXECUTIVE SUMMARY**

The Receiver asks that the Court order non-party ICANN to somehow take five domain names away from the current registered name holders in order to change the registration data of those five domain names to identify the Receiver as the new registered name holder.[1] Contrary to the Receiver's inaccurate and misleading assertions regarding ICANN's ability and authority to effectuate such domain name transfers – assertions made on information and belief and without <u>any</u> factual support – the domain names identified in the Receiver's motion are

---

[1] There are 22 domain names that are the subject of the Receiver's second motion to enforce the stay in this case. Each of the 22 domain names was subject to a UDRP proceeding and in each case the UDRP panel ordered that the domain names be transferred to the UDRP complainant. However, only five domain names were actually transferred by the registrar (Fabulous.com) to a new domain name holder as ordered by the URDP provider. Fifteen of the domain names have not been transferred and remain with the UDRP respondent; two of the domain names are not even registered anymore. Thus, insofar as ICANN is concerned, the Receiver seeks an order requiring ICANN to "re-transfer" five domain names to the Receiver.

For the Court's convenience, ICANN is filing a chart that shows each domain name identified in the Receiver's motion, along with the decision entered by of the UDRP provider, identification of the current registrar, current registered name holder, and the status of the domain name (i.e., whether it has been transferred or not). *See* Exhibit A, attached to the declaration of Kurt Pritz.

1

controlled by the respective registered name holders, not ICANN. Only a registered name holder has the authority and ability to change its registration information and thus effectuate a change in control of its domain name registration to a different registered name holder. ICANN lacks the authority to force a third party to give up its rights as a registered name holder and transfer domain names to the Receiver. And even if ICANN had such authority (which it does not), ICANN does not have access to a registered name holder's registration information and thus lacks the technical ability to change the registrations and effectuate a transfer of the domain names to the Receiver.

For these reasons and those described more fully below, ICANN respectfully requests that the Court deny the Receiver's second motion to enforce the stay.[2]

## II. ARGUMENT

By his second motion to enforce the stay, the Receiver seeks an order: (a) declaring certain default judgments entered by various UDRP tribunals void based on the Receivership stay; (b) requiring the registrar to disregard the default judgments and not transfer these domain names (as ordered by the respective UDRP tribunals); and (c) requiring ICANN to "re-transfer back to the Receivership estate any of these domain names already transferred pursuant to the default judgments." (Mot. at 1.)

ICANN takes no position regarding (a) – whether this Court may declare default judgments entered in UDRP proceedings void based on the receivership stay in this case. As established in ICANN's previous filings in this matter, ICANN does not preside over or otherwise administer or participate in UDRP proceedings. (*See* Dkt. #s 728, 737.) The interplay between UDRP decisions and orders entered in the instant case is an issue between the Receiver

---

[2] ICANN objected to this Court's jurisdiction over ICANN in its response to the Court's Order to Show Cause and incorporates such objection herein. (Dkt. # 728.) This response in no way constitutes a waiver of ICANN's defense of lack of personal jurisdiction, a defense that ICANN expressly preserves.

here, the Court, the dispute resolution provider administering the UDRP proceeding and the parties to the UDRP proceeding – not ICANN.

Nor will ICANN address (b) – the Court's ability to direct the registrar (Fabulous.com) to ignore UDRP decisions and not transfer the domain name registrations, except to note that Fabulous.com is apparently already ignoring many of the UDRP decisions. When a UDRP provider orders the transfer of a domain name, the transfer must take place within ten days. Here, despite the entry of the UDRP panel's transfer orders many months ago, Fabulous.com has not transferred 15 of the 22 domain names at issue in the Receiver's motion. (Pritz Decl., ¶¶ 6, 8, Ex. A.)[3] Because the UDRP decisions were entered months ago, coupled with Fabulous.com's apparent willingness to ignore these orders, the Receiver's request appears moot. The Receiver's request also is untimely, as it only now is asking the Court to order Fabulous.com to ignore the UDRP decisions, some of which were entered nearly one year ago.[4]

ICANN is filing this response to address (c) – the Receiver's request that the Court order ICANN to "re-transfer back to the Receivership estate any of these domain names already transferred pursuant to the default judgments." (Mot. at 1.) Only five of the domain name registrations have been transferred pursuant to a UDRP decision – wetafx.com, publicstorge.com, pulicstorage.com, puplicstorage.com, and aplle.com. (Pritz Decl., ¶¶ 6, 8, Ex. A.) ICANN was not involved in these transfers, and it lacks both the technical capability to

---

[3] The Registrar Accreditation Agreement that ICANN enters into with each ICANN-approved registrar, including Fabulous.com, requires the registrar to comply with UDRP decisions. As highlighted in the Receiver's second motion to enforce the stay, Fabulous.com's apparent failure to transfer these domain names pursuant to the UDRP panel decisions and its Registrar Accreditation Agreement may be cause for ICANN to initiate a contractual compliance review of Fabulous.com.

[4] The exhibits filed in support of the Receiver's motion demonstrate that persons purporting to represent the Receiver were aware of and participated in the UDRP proceedings.

Each of the UDRP proceedings referenced by the Receiver resulted in a finding that the domain names were being used improperly and the names should be transferred to the complainants. The findings of the UDRP panels should not be taken lightly by this Court, and any consideration of the completion of a transfer should also take into account measures to protect the claimants from any further harm from the Receivership estate's use of the domain names.

effectuate the requested relief and the authority to require a registered name holder or a registrar to change the registration information in favor of the Receiver. As such, the Receiver's request for relief as to ICANN should be denied. ICANN will also address the Receiver's supplement to his second motion, which wrongly suggests that ICANN has the ability to order UDRP providers to terminate UDRP proceedings.

### A. ICANN Does Not Have The Technical Capability Or Authority To Transfer Domain Names.

Registering, transferring, or deleting a domain name involves interaction – and a series of contracts – between the registered name holder, the registrar and the registry.[5] ICANN is not involved. In order to register a domain name (and become a registered name holder), one first has to go to an ICANN-accredited registrar or reseller,[6] which collects information about the registered name holder (such as identifying information on the registered name holder, name server address, billing information, and other contact information) as part of the registration process. (Pritz Decl., ¶ 9.) The registered name holder and registrar then enter into a registration agreement. (*Id.*)

For that domain name registration to appear on the Internet, the registrar must then provide information to the registry (the registry for .COM is VeriSign). (*Id.* at ¶ 10.) The registrar maintains a contract with each registry for which it is authorized to do business, and the transfer of information between the registry and the registrar occurs pursuant to this agreement. (*Id.*)

---

[5] There is only one registry that maintains the central database for all domain names in a given TLD. By contrast, there are several hundred ICANN-accredited registrars authorized to register domain names in any given TLD for individual registered name holders.

[6] If through a reseller, the reseller acts as an agent for the ICANN-accredited registrar.

ICANN is not involved in either the collection or maintenance of information on individual domain name registrations. (*Id.* at ¶ 11.) Indeed, ICANN plays no role whatsoever in the registration of individual domain names.

Registrars are responsible for making some of the registered name holder's identifying information publicly available through a Whois service. (*Id.* at ¶ 12.) The Whois database is a standard or protocol that allows users to type in the domain name they wish to query for information on whether a name is registered, and if so, when it was registered and by whom. (*Id.*) Internet users around the world can access Whois services to identify information on registered name holders, but they do not have the ability to change the Whois information on names for which they are not the registered name holders. (*Id.*) ICANN does not maintain or have access (other than what is publicly available to everyone) to a registrar's Whois database. (*Id.* at ¶ 13.) In fact, for ICANN to learn information on individual domain name registrations, ICANN must perform the exact same query through a registrar's Whois service that this Court or anyone else would have to perform. (*Id.*)

ICANN does not have the authority, discretion or access to change registration information. (*Id.* at ¶ 14.) ICANN does not contract with registered name holders and maintains no policy or other initiative governing what steps a registered name holder must undertake to change its registration information to change control of a domain name to a new registered name holder. (*Id.* at ¶ 15.) That process is dictated by the registration agreement between the registered name holder and the registrar. The steps required to change the control over a domain name to a different registered name holder vary; each registrar maintains its own registration agreement. (*Id.*) Generally, however, the registered name holder and the registrar communicate via a secured electronic and automated system. Using automated commands, the current

registered name holder must inform the registrar of the change in registration information, and specifically identify of the new registered name holder. (*Id.*)

Only the current registered name holder (or registrar, pursuant to a court or UDRP tribunal order) has the discretion and authority to change the registration information and thus effectuate a "transfer" of a domain name to a new registered name holder. (*Id.* at ¶ 16.) Moreover, only the registered name holder is authorized to inform the registrar of a change in the registration information so that the registrar may accurately populate the Whois database. (*Id.* at ¶ 17.) ICANN lacks the discretion, authority and technical ability to transfer domains name from one registered name holder to another or force a registered name holder to give up its domain name registrations and transfer them elsewhere. (*Id.* at ¶ 18.)[7]

In sum, contrary to the Receiver's assertions (without evidentiary support), ICANN does not have access to the necessary data in order to change registration information from one registered name holder to another. (*Id.* at ¶ 25.) Nor does ICANN have the authority – by virtue of contract, policy or otherwise – to direct a registered name holder or a registrar to initiate a transfer request, approve a transfer request, or instruct a registry to undo a transfer already

---

[7] The only situations where ICANN is involved in a transfer of names is in "bulk" transfer scenarios between two registrars. The bulk transfer provisions require transfer of all registrations sponsored by one registrar to another, either due to: (i) the acquisition of that registrar or its assets by another registrar; or (ii) lack of accreditation of that registrar. The bulk transfer provisions do not allow for a change of registered name holder – only a change of registrar. (Pritz Decl., ¶ 23.)

Even in these bulk transfer cases, it is not ICANN that completes the transfer. The transfer can only be completed by the registry. (*Id* at ¶ 24.) ICANN provides only the process and necessary approvals. ICANN does not have access to the registry database and cannot technically complete the transfer between registrars. (*Id.*) In any event, the Receiver has not asked the Court to order ICANN to undertake such a "bulk" transfer.

Nor does ICANN have the authority to transfer individual domain names between registrars. According to the .COM registry agreement, upon a request from the registered name holder, the new (gaining registrar) will issue a Transfer command to the registry. (*See id.* at ¶¶ 19-21, Ex. B (.COM Registry Agreement, App. C, § 4.3.10 (Transfer).) The current (and potential losing) registrar then has five days to approve or reject the transfer. The registry then processes the transfer. ICANN is not involved in the individual domain name transfer process. (*Id.* at ¶ 21.)

Moreover, only the registry has the technical ability and authority to undo an inter-registrar transfer after a transfer has occurred. (*Id.* at ¶ 22, Ex. C (Policy on Transfer of Registrations between Registrars, at § 6 (Registry Requirements) (specifying limited circumstances when the registry may undo a transfer).)

effectuated. (*Id.*) Each of these matters is specifically governed by contractual relationships between registered name holders and registrars and between registries and registrars. *Id.*

There is no policy or contract or other language anywhere that authorizes ICANN to initiate or process or "undo" transfer requests, either from one registered name holder to another or between registrars, or otherwise direct the registered name holders, registrars or registry to do so. (*Id.* at ¶¶ 14-15.) The Receiver fails to point the Court to <u>any</u> policy or process or contract language that would even arguably grant ICANN the authority to initiate or process or "undo" transfer requests. Nor does the Receiver offer evidence that there exists a technical process by which ICANN could effectuate such a transfer. Moreover, the Receiver can cite no case where ICANN was ordered to forcibly change rights of one registered name holder in favor of a different registered name holder. Instead, as he has done repeatedly in this matter, the Receiver makes bald assertions "on information and belief" but with <u>no evidence</u> to support those assertions.

In support of his statement that "ICANN has the ability to immediately re-transfer such domain name (sic) back to the LLCs (*i.e.*, the Receivership estate)" (Mot. at 8), the Receiver relies on the declaration of Damon Nelson. But Mr. Nelson's declaration does not contain any facts or other basis from which to conclude that Mr. Nelson has any personal knowledge on the issue. Instead, it posits Mr. Nelson's (unfounded) "belief." (Declaration of Damon Nelson, ¶ 22, Dkt. # 739) ("I also ***believe*** that, for any Domain Name at issue that might have already been transferred pursuant to a Default Decision, ICANN could immediately re-transfer such Domain name at issue back to the LLCs.") (emphasis added). "[D]eclarations on 'information and belief' are entitled to no weight where the declarant lacks personal knowledge." *Maddox v. Ladd*, No. 07-cv-1227, 2011 WL 2946174, at *5 (E.D. Cal. July 21, 2011). Mr. Nelson's declaration

therefore cannot support the Receiver's claims and should be rejected. *See also GN Trade, Inc. v. Siemens*, No. 11-994, 2011 WL 4591080, at *4 (E.D. Cal. Sept. 30, 2011) ("the declaration is basically an 'information and belief' allegation . . . and thus not enough to overcome defendant's unequivocal, sworn denials").

The Receiver also cites the declaration submitted in support of ICANN's reply to the Receiver's response to the Court's order to show cause in support of his belief that ICANN has the ability to re-transfer domain names. But this citation is, at best, in error and, at worst, a deliberate misrepresentation of facts. (Dkt. # 737-1, ¶ 14.) The statements cited by the Receiver only establish that the Registrar Accreditation Agreement that each registrar enters into with ICANN requires the registrar to comply with the UDRP. ICANN's Senior Vice President, Stakeholder Relations declared that "[t]o the extent that a registrar fails to comply with the UDRP, ICANN may deem the registrar in breach of its agreement. But even then, ICANN does not have authority to force the registrar to comply with a UDRP decision." *Id.* The declarant said nothing about ICANN's ability to re-transfer domain names (and that ability does not exist).

### 1. ICANN Cannot Change Registration Information For Domain Names That Are No Longer Registered.

At the time of this filing, two of the domain names identified in the Receiver's motion (leghanesbali.com and publicstroagejob.com) are not registered to any registered name holder and therefore are not active domain names. (Pritz Decl., ¶¶ 6, 8, Ex A.) There is therefore no domain name for ICANN to "transfer" even if it had such authority or ability (which it does not). (*Id.*)

### 2. Fabulous.com Is Not The Accredited Registrar Of Two Of The Domain Names Identified In The Receiver's Motion.

The Receiver wrongly states that "Fabulous.com is the registrar of the domain names at issue." (Mot. at 7.) In fact, as confirmed by the Whois database, two domain names

(wetafx.com and publicstorge.com) are registered through accredited registrars other than Fabulous.com (the registrars are Register.com and Network Solutions, respectively). (Pritz Decl., ¶¶ 7, 8, Ex. A.) As explained above, only the current registered name holder and its registrar have the authority and technical ability to effectuate a change in control of domain name registrations. The Receiver must seek relief from these parties, not Fabulous.com or ICANN.

### B. ICANN Does Not Have The Power To Order UDRP Providers To Terminate UDRP Proceedings.

In the Receiver's "supplement" to the second motion to enforce the stay (Dkt. # 756), the Receiver directs the Court to two recent UDRP decisions that terminated two UDRP proceedings. As ICANN does not administer and is not involved in UDRP proceedings, ICANN will not address whether these decisions support or negate the Receiver's position that the default judgments previously entered in UDRP proceedings are void. However, ICANN here clarifies certain misrepresentations made by the Receiver in his supplemental filing.

First, the Receiver's representation that these WIPO panels are "both under ICANN's control" and suggestion that ICANN somehow had a role in terminating these UDRP proceedings is wrong. ICANN does not "control" UDRP proceedings or the panels of arbitrators constituted under the UDRP. (Pritz Decl., ¶ 27.) Nor does ICANN have the authority to instruct or direct a UDRP panel to terminate a UDRP proceeding. (*Id.* at ¶ 28.) The UDRP decisions attached to the Receiver's motion do not even mention ICANN, but instead rely on the panel's own authority and discretion to terminate UDRP proceedings under the UDRP rules. *See, e.g.,* Receiver's Supp. Mot., Ex. A ("In all circumstances, the Panel finds the appropriate course, pursuant to its authority under UDRP Rule 18, to order the termination of the instant UDRP proceeding.").

Second, the Receiver mischaracterizes the UDRP decisions, stating that "both state that the original stay established in the Receivership Order (the "Original Stay") necessitates termination of the UDRP Actions." (Mot. at 1.) In fact, only one UDRP decision even references the stay issued in the Receivership Order. And neither UDRP decision states that the Original Stay "necessitates termination of the UDRP Actions." Instead, the decision(s) to terminate the UDRP proceedings were made in the panel's sole discretion pursuant to the UDRP rules.

### III.  CONCLUSION

ICANN lacks the technical capabilities necessary to change the registration information associated with a domain name from one registered name holder to another or even between registrars. ICANN also has no authority to initiate, process or "undo" domain name transfers. For these reasons and those described more fully above, ICANN respectfully requests that the Court deny the Receiver's second motion to enforce the stay.

Dated:  January 3, 2012            Respectfully submitted,

**JONES DAY**

/s/ Jason Cross
Jeffrey A. LeVee
Kate Wallace
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 489-3939
Facsimile:   (213) 243-2539
Email: jlevee@jonesday.com
        kwallace@jonesday.com

Jason Cross
Texas State Bar No. 24045727
2727 N. Harwood Street
Dallas, TX  75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
Email:  jcross@jonesday.com

*ATTORNEYS FOR NON-PARTY*
*INTERNET CORPORATION FOR*
*ASSIGNED NAMES AND NUMBERS*

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2012, I electronically filed the foregoing Non-Party ICANN's Response To Order To The Receiver's Second Motion And Supplement To Second Motion To Enforce Stay with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to the individuals who have consented in writing to accept this Notice as service of this document by electronic means.

                                          /s/ Jason Cross

LAI-3155933v3